**PENNSYLVANIA CO. FOR INSURANCES ON LIVES AND GRANTING ANNUITIES v. DECKERT et al.**

**INDEPENDENCE SHARES CORPORATION v. SAME.**

**MILLER et al. v. SAME.**

Nos. 7768, 7769, 7773.

Circuit Court of Appeals, Third Circuit.

Nov. 19, 1941.

Walter Biddle Saul, of Philadelphia, Pa., (Francis H. Bohlen, Jr., and Saul, Ewing, Remick & Saul, all of Philadelphia, Pa., on the brief), for appellant, Pennsylvania Co.

George Maxman, of Philadelphia, Pa., (Charles L. Miller, of Lancaster, Pa., on the brief), for intervenors-appellants, Miller et al.

Richardson Dilworth, of Philadelphia, Pa. (Harry A. Kalish, Thomas P. Glassmoyer, and Murdoch, Paxson, Kalish & Green, all of Philadelphia, Pa., on the brief), for Independence Shares Corporation, Alfred H. Geary, Frank McCown, Robert E. Bonner, Horace M. Barba, and Eckley B. Coxe, 3d.

Harry Shapiro, of Philadelphia, Pa. (Wm. B. Rudenko, of Philadelphia, Pa., on the brief), for appellees.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

This is the second time that this case has been before this court upon appeal. 108 F.2d 51. We shall restate briefly what we consider the essential facts.

The Capital Savings Plan Contract Certificates purchased by the plaintiffs call for installment payments to be made by the subscribers. These payments are made by the subscribers to The Pennsylvania Company for Insurances on Lives and Granting Annuities as trustee. Pennsylvania deducts certain fixed charges and uses the balance of these installment payments, as directed by Independence Shares Corporation, to purchase Independence Trust Shares for the benefit and accounts of certificate holders. Independence Trust Shares represent aliquot interests in a trust of common stocks of American corporations deposited by Independence with Pennsylvania. Pursuant to agreements between Pennsylvania and Independence, Pennsylvania collects dividends and profits from the stocks and administers the trust. The underlying stocks comprising the trust portfolio under the terms of the agreement are selected by Independence. Independence exercises the power of selling underlying stocks out of the portfolio and of purchasing other stocks in lieu thereof. While we have referred to Pennsylvania as a trustee, the function of making investments ordinarily accomplished by a trustee is performed by Independence. In several particulars Pennsylvania is little more than a custodian performing its most important functions as trustee under the direction of Independence, as the agreements between it and Independence require.

The injunction issued by the court below Deckert v. Independence Shares Corp., D. C., 39 F.Supp. 592, has the effect of suspending the operation of the trusts and the functions of Pennsylvania. We have set it out in the note below.[1] The defendants have appealed from it.

---

[1] "Order for Injunctions.

"And now, to wit, this 17th day of June, 1941, upon consideration of the foregoing Motion, notice having been waived by defendants, it is Ordered, Adjudged and Decreed:

"(a) That the defendant, The Pennsylvania Company for Insurances on Lives and Granting Annuities, in its capacity as trustee under the trust agreements with Capital Savings Plan, Inc., and in its capacity as custodian under Independence Trust Shares Purchase Plans, be enjoined from making any deductions, other than deductions for insurance premiums and taxes, from payments received by it from the holders of Capital Savings Plan Contract Certificates, or the holders of Independence Trust Shares Purchase Plans, or from any distributions received upon Independence Trust Shares held by it, as trustee or custodian as aforesaid, for the holders of said contract certificates or purchase plans, and from applying said payments or said distributions, or any part thereof, to the purchase from Independence Shares Corporation, or otherwise, of Independence Trust Shares.

"(b) That the Pennsylvania Company for Insurances on Lives and Granting Annuities, as trustee under the trust agreements with Capital Savings Plan, Inc., and as custodian under the Independence Trust Shares Purchase Plans, be restrained and enjoined from delivering any Independence Trust Shares, or from paying over the proceeds of the sale, redemption, or liquidation of any Independence Trust Shares to the holder of any Capital Savings Plan Contract Certificate, or to the holder of any Independence Trust Shares Purchase Plan, providing, however, that the Pennsylvania Company for Insurances on Lives and Granting Annuities, as trustee or custodian as aforesaid, shall not be prevented under this injunction from selling, redeeming, or liquidating any Trust Shares at the direction of any holder of said contract certificates or purchase plans.

Jurisdiction of the action lies in the court below by virtue of Section 12(2) of the Securities Act of 1933, 48 Stat. 84, 15 U.S.C.A. § 77*l*, Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189.

There were originally nine plaintiffs, all of whom except one were residents of Pennsylvania. Other owners and holders of certificates have been allowed to intervene as parties plaintiff until now the parties plaintiff number forty-nine persons. These plaintiffs allege that their plans were sold to them by Independence or by its predecessors, Capital Savings Plan, Inc. (the liabilities of which have been assumed by Independence), by misrepresentation or by the omission of material facts. The main objects of the bill are the rescission of the contracts of sale and the recovery back of the considerations severally paid. The complaint also alleges that Independence is insolvent, that its business is at a standstill and that it is threatened with many suits which may result in preferences to creditors. The bill seeks the appointment of a receiver, the liquidation of the corporation and the return of the plaintiffs' payments. It is cast in the form of a class bill, the plaintiffs suing not only on behalf of themselves, but also all other certificate holders and planholders who may, with the plaintiffs' consent, join therein. A motion was made to amend the complaint and charge Pennsylvania and Independence with conspiring to sell and selling to the public by fraudulent means plans of investment which are also inherently fraudulent. A motion in opposition to the motion to amend the complaint was filed by the Pennsylvania Company. These motions are undetermined.

The District Court early referred the case to a special master to determine whether Independence Shares Corporation was solvent or insolvent. The master's report has been filed, finding Independence to be insolvent upon the theory that since the planholders are entitled to the return of the considerations paid by them, the claims of planholders against Independence far exceed its assets. Objections have been filed to the report but these have not yet been passed upon by the court below. By an earlier injunction of the court below, Deckert v. Independence Shares Corp., D.C., 27 F.Supp. 763, sustained by the Supreme Court in Deckert v. Independence Shares Corp., supra, reversing the decision of this court in Independence Shares Corp. v. Deckert, 108 F.2d 51, the court below granted an injunction restraining Pennsylvania from disposing of a fund of $38,250.85 belonging to Independence. This fund represents certain charges, income and proceeds received in the administration of the trust and represents compensation alleged to be due Independence for its services as the investing and managing agent.

The intervention of eleven other persons holding contracts, plans and certificates was allowed by the court below. These intervenors assert that there was no fraud or misrepresentation in the sale to them of their securities, and oppose the appointment of a receiver. At the time when suit was begun there were approximately 18,000 plans outstanding. In approximate numbers, one-third of the planholders have liquidated their plans; another third have ceased making payments; and the remaining third are continuing to make payments. Thus as of December 31, 1940 there were more than 13,000 persons holding plans entitling them to more than 1,655,000 trust shares which possessed a liquidation value as of January 1, 1941 in excess of $3,245,000. The trust assets back of the shares are worth in excess of $2,900,000. Approximately half of the plans sold had a life insurance feature whereby if a planholder dies an insurance company will pay to Pennsylvania a sum of insurance calculated to make up the balance remaining unpaid upon the plan at the time of his death. Approximately 3,650 of these latter planholders are continuing their payments to Pennsylvania as provided by their contracts. If the forty-nine plaintiffs were to recover in full the considera-

"(c) That the Pennsylvania Company for Insurances on Lives and Granting Annuities, as trustee under the trust agreements with Capital Savings Plan, Inc., and as custodian under the Independence Trust Shares Purchase Plans, shall segregate and set aside in a special account, until further order of this court, all of said payments, distributions and proceeds of sale, liquidation or redemption, excepting only deductions for insurance premiums and taxes.

"(d) This order shall not affect any Independence Trust Shares other than those held by the Pennsylvania Company for Insurances on Lives and Granting Annuities, as trustee under the trust agreements with Capital Savings Plan, Inc., and those held by Bean & Company, nominee of the Pennsylvania Company for Insurances on Lives and Granting Annuities, as custodian for Independence Trust Shares Purchase Plans."

tion paid by them with interest, the sum due from Independence would not exceed $10,000. · It may be noted that the number and value of the trust shares held for the appellants-intervenors exceeds that held for the plaintiffs and that a major part of the securities owned by the forty-nine plaintiffs was sold by one selling agent.

■ The court below has described the action at bar as a "hybrid" class action maintainable under the provisions of Rule 23(a) (2) of the Rules of Federal Procedure, 28 U.S.C.A. following section 723c. We had previously denominated it a "spurious" class action under Rule 23(a) (3). Names are not important. If the rights of the individual plaintiffs are separate causes of action and they have no right to a common fund or to common property, the class action at bar is a "spurious" one. If, upon the other hand, the individual plaintiffs having individual causes of action have also a right to a common fund or in common property, the class action may be "hybrid." It should be borne in mind that the so-called spurious class cause may be turned by circumstances into the hybrid action. For example, if a corporation engaged in the sale of stock by fraudulent means to a number of individuals, under Rule 23(a) (2) they might join together as parties-plaintiff in one action to avoid multiplicity of suits though seeking separate judgments. This is the typical "spurious" class action. If, on the other hand, the corporation which they were suing had become insolvent in the meantime and the plaintiffs were compelled to look to a common fund in the hands of a receiver for the payment of their claims, they would then become claimants in a receivership, the common hybrid action referred to by the learned district judge. In this connection it should be borne in mind that the trial court found that the trust assets held by Pennsylvania for the planholders were not subject to the claims of individual planholders who might recover judgments against Independence, saying [39 F.Supp. 598]: "It may be stated at this point that I am in agreement with the contention of Pennsylvania that the assets held by Pennsylvania for plan holders are 'trust assets' and that no plan holders, by sustaining a claim against Independence or Pennsylvania, can in any way thereby obtain any interest in the trust assets held for other plan holders. This is so even though the particular trust assets are not 'earmarked' for the benefit of any particular plan holders."

If the statement of the court below is correct, we must conclude at least insofar as trust assets are concerned, that the individual planholders possess no right to common property. Therefore they could not maintain a hybrid class action in respect to the trust funds. If the statement of the trial judge is correct, even if Independence is insolvent there will be applicable to the claims of the planholders only the general assets of Independence. Claims to such general assets might be maintained in a hybrid class action.

It will be observed that the questions involved are not easy to answer. Their solution can be found only in a determination of the true nature of the suit at bar. The gist of the charges against Independence is that it sold plans in violation of the provisions of Section 12(2) of the Securities Act, that it represented falsely that Pennsylvania was backing the success of the venture, that the substance of the plans and the nature of the security were misrepresented and that there was an omission to state a material fact, viz., that an overloading charge of $7\frac{1}{2}\%$ (originally 9%) was being charged by Independence for its services in buying and selling the underlying securities comprising the portfolio. Evidence has been offered upon some of these issues and in his two opinions the learned district judge has passed upon some of the questions presented but has omitted to pass upon others.

The charges of fraud contained in the supplemental complaint filed by the plaintiffs against the Pennsylvania Company, in effect taxing Independence and Pennsylvania with a common law conspiracy to defraud the planholders, are such as might conceivably vitiate the express trusts set up and render both Independence and Pennsylvania trustees ex maleficio. If these charges were sustained individual planholders might well have a right to the trust funds and be able to maintain the ordinary hybrid class action of cestuis que trustent in respect thereto. This question cannot be answered however in advance of the submission of proof upon the issues raised by the supplemental complaint and a determination of them by the court below.

■ The theory of the plaintiffs' action (without regard to the supplemental bill) rests in that portion of Section 12(2) which provides that: "Any person who * * * sells a security * * * by means of * * * [an] oral communication, which

includes an untrue statement of a material fact or omits to state a material fact necessary * * * to make the statements * * * not misleading * * * shall be liable to the person purchasing such security from him." The gravamen of the cause of action thus given is the misleading of the purchaser. This is made clear by the parenthetical clause of the section, "the purchaser not knowing of such untruth or omission". Congress had in mind that the individual who claimed recovery of his consideration should appear, allege and prove that he had been misled. By this statement we do not mean to lay down the narrow rule that each individual constituting the entire class of thirteen thousand planholders, or indeed any given number or proportion of them, must be required to intervene in the pending cause and prove their respective claims, praying the appointment of a receiver to distribute ratably the assets of Independence. We mean that there must be proof that the present plaintiffs or those persons who may hereafter intervene as plaintiffs are representatives of the planholders. This proof is now lacking.

■ We conclude therefore, basing that conclusion upon the present record before us, that the suit at bar cannot be maintained at the present time as other than a spurious class action.[2] But if it is to be maintained as a class action at all, the plaintiffs must "fairly insure the adequate representation of all" of their class.[3] As we have stated the record discloses a total of forty-nine plaintiffs and the total value of the consideration paid by them plus interest will not exceed $10,000. The eleven planholders who have intervened in opposition to the plaintiffs possess securities which exceed in value the total consideration paid by the plaintiffs. In the meantime approximately 13,000 other planholders, the value of whose securities amount to several million dollars, have taken no part in the controversy and the record does not disclose what their attitude in respect to the litigation may be.

■■ Upon the present record we think that it is impossible to conclude that the plaintiffs are fairly representative of the class of planholders. The fact that counsel for the parties make many diametrically opposed assertions as to the status and state of mind of the remaining 13.000 planholders who have not appeared is itself an indication of the speculative character of the assertions. We think that the representation of all or even of a substantial number of planholders has not been fairly insured. Sparks v. Robinson, 115 Ky. 453, 74 S.W. 176. Cf. Pelelas v. Caterpillar Tractor Co., 7 Cir., 113 F.2d 629, 632, certiorari denied, 311 U.S. 700, 61 S.Ct. 138, 85 L.Ed. 454; 2 Moore's Federal Practice, Sec. 23.03, p. 2234. The standing of the plaintiffs to sue in the representative capacity they assert must be demonstrated before a receiver can be appointed or an injunction paralyzing the functioning of the trusts be sustained.

■ Three of the four assignments of error raise issues of limitation of actions imposed by Section 13 of the Securities Act, 15 U.S.C.A. § 77m. The first of these assignments raises the question of the right of the defendants to amend their answers and plead the provisions of Section 13 in limitation of the plaintiffs' action. The second assignment raises an issue as to the propriety of the order of the court below permitting the addition of parties-plaintiff whose causes of action the defendants assert are barred by the provisions of limitation of the section. The third questions the correctness of the order made by the court below granting the plaintiffs' motion to strike certain paragraphs of the defendants' supplemental answer pleading limitations. These orders are interlocutory and therefore not appealable except upon final judgment. None the less, since the injunction granted has the effect of paralyzing the

---

[2] The suit at bar is composed of a number of separate individual actions. Similar aggregated individual actions were passed upon in the Second Circuit in Ayer v. Kemper, 48 F.2d 11, 14, certiorari denied sub nomine, Union Trust Company v. Ayer, 284 U.S. 639, 52 S.Ct. 20, 76 L.Ed. 543, and Hackner v. Guaranty Trust Company, 2 Cir., 117 F.2d 95, 97, certiorari denied, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520. See also Railway Express Agency v. Jones, 7 Cir., 106 F.2d 341, 343. The decisions cited throw some light on the law applicable to the instant case.

[3] Rule 23(a) provides in part: "Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is * * * (3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought. * * * "

functioning of the trusts and since the court below passed upon the question of limitation of actions in arriving at that injunction, we think it appropriate to express our views upon the right of plaintiffs or other planholders to maintain the suit in the light of the provisions of Section 13.

Section 13 states, "No action shall be maintained to enforce any liability * * * under * * * section 12(2) [77l(2)] unless brought within one year after the discovery of the untrue statement or the omission * * *. In no event shall any such action be brought to enforce a liability created under * * * Section 12(2) [77l(2)] more than three years after the sale."

 We think that Section 12 creates a new cause of action which though bearing some resemblance to the old common law action of deceit nevertheless imposes new obligations upon the vendor of securities and gives new rights to the vendee. For example, it is not necessary for the vendee in maintaining an action for the recovery of consideration to prove that the vendor intended to deceive him as at common law. It is sufficient if the vendor did deceive the vendee even though the vendor had no such intent. Another striking contrast is in the liability for non-disclosure of material facts. It has been held almost universally that when a statute creating a new cause of action contains in itself a statute of limitations, the limitation imposed becomes an integral part of the right of action created by the statute and so limits it that an aggrieved person cannot maintain his suit after the time fixed by the statute has expired. In our opinion the provisions of Section 13 are part of and a limitation upon the right of action given by Section 12(2) and that the effect of the limitation thus imposed must be passed upon by the District Court. For analogy see Atlantic Coast Line Railroad v. Burnette, 239 U.S. 199, 36 S.Ct. 75, 60 L.Ed. 226, Employer's Liability Act 1908, 35 Stat. 65, 45 U.S.C.A. §§ 51–59, and Port v. Litoff, 5 Cir., 103 F.2d 302, Merchant Marine Act 1920, 41 Stat. 1007, 46 U. S.C.A. § 597 et seq.

 We conclude by reason of the provisions of Section 13 that a planholder may not intervene as an additional party-plaintiff in the action at bar at this juncture if he purchased his securities more than three years prior to the commencement of the suit. This in turn leads to the question whether or not the limitation imposed by Section 13 is tolled by the installment purchases of the planholders or by the payment of interest upon separate accounts by Pennsylvania. These are questions which also must be determined by the court below.

 Assuming that the limitation of action of Section 13 is not tolled by installment payments or by the crediting of interest, can those planholders whose plans were purchased by them more than three years prior to the commencement of the suit at bar be permitted to intervene as parties-plaintiff? We conclude that they may not unless a receiver be appointed for Independence upon the ground of insolvency. Such a finding, if and when made by the District Court, in turn depends upon the ability of the parties-plaintiff to maintain the spurious class suit. If a receiver be appointed for Independence on the grounds of insolvency as a result of the spurious class suit, then that suit becomes a hybrid one and the provisions of Section 13, whether imposed in express terms or by analogy, would not bar the claims of those planholders who seek to share in the assets unless barred by laches at the time of the commencement of the suit. Indeed, if the plaintiffs and subsequent intervening plaintiffs can demonstrate their representative capacity and can prove that the securities sold to the planholders were sold by the fraud of Independence and Pennsylvania as the result of a conspiracy a trust ex maleficio might arise. Under such circumstances the bar imposed by Section 13 would not prevent the planholders' recovery of the consideration paid by them. The trusts would come to an end and it would be necessary to distribute the assets to those equitably entitled thereto. Laches alone would then serve to bar the claim of any planholder.

 Until the questions which we have outlined are determined by the trial court we think that the injunctive relief granted by impounding the sum of $38,250.85 is sufficient to protect the plaintiffs and that the injunction here appealed from must be deemed to be premature and too drastic in its effect. The relief given by it may never be needed. It disturbs the status of the parties instead of maintaining it. It paralyzes the operation of express trusts as we have already stated. We think that in issuing it the court below improperly exercised its judicial discretion.

Accordingly, the order for injunction is reversed and the cause is remanded to the court below with directions to proceed in conformity with this opinion.