**OPPENHEIMER** et al. v. **F. J. YOUNG &** CO., Inc., et al.

District Court, S. D. New York.
March 1, 1943.

Davidson & Mann, of New York City (Maurice P. Davidson and Gustave B. Garfield, both of New York City, of counsel), for plaintiffs.

Wright, Gordon, Zachry, Parlin & Cahill, of New York City (William W. Dulles, Fred J. Knauer, and John P. Moore, all of New York City, of counsel), for defendant White, Weld & Co.

CAFFEY, District Judge.

Defendant White, Weld & Co. (hereinafter sometimes called White-Weld) has moved for four things: (1) Dismissal of the amended complaint, (2) a more definite and certain statement of plaintiffs' claim, (3) separate statement and numbering of the causes of action and (4) security for costs.

The second, third and fourth items of relief are asked for in event the first relief sought be not granted. Grounds are assigned for each request. These will be set out hereafter.

Although, in form, there are two motions that surely are alternatives, all will be discussed as if four separate, independent and unrelated motions were presented. I think this method is better, because I wish to dispose of all the issues raised and I feel that by the plan adopted I can make the matter clearer than I could do in any other way.

By way of introduction, I deem it well to give, as a background, some preliminary

explanation of the general features of the action. The information about them is derived from the amended complaint, the affidavit of Mr. Garfield verified January 29, 1943, and the affidavit of Mr. Diegnan, verified January 9, 1943.

The controversy relates to bonds on which the City of Cordoba, Argentina, was the obligor. The bonds were issued in New York in 1927 and were sold to the public (Diegnan affidavit, p. 2, paragraph 3). The aggregate principal amount was $4,254,500 (amended complaint, paragraph 7). Each bond was of the par of $1,000 (amended complaint, paragraph 19, pp. 7, 8).

A default occurred in 1932 (amended complaint, paragraph 7; Diegnan affidavit, p. 2, paragraph 3). There were additional defaults in 1937 and 1938 (Diegnan, paragraph 4, p. 2).

Four schemes for making payments on the bonds were adopted. These were (1) a readjustment plan in 1934 (amended complaint, paragraph 11; Exhibit A to Exhibit I annexed to original complaint; Diegnan, p. 2, paragraph 3); (2) a judicial settlement in 1939 of law suits brought in Argentina (Diegnan, paragraph 4, p. 2); (3) an offer by defendant F. J. Young & Co. Inc. (hereinafter sometimes called Young & Co.) in March, 1942 (Diegnan, paragraph 7, p. 4; Exhibit 3 attached to original complaint); and (4) a distribution to bondholders in August, 1942, out of a fund remitted by a bank in Argentina to White-Weld as fiscal agent under the judicial settlement (Diegnan, paragraph 8, p. 4).

Bondholders who assented to the 1934 readjustment plan had their bonds stamped to that effect as of July 3, 1934. Those bonds are referred to in the amended complaint as "stamped." The bonds of non-assenters are spoken of as "unstamped." The pending suit was brought by the plaintiff, suing individually, and (as recited in the caption and several times in the body of the amended complaint) in a representative capacity on behalf of all former holders of bonds "stamped as of July 3, 1934," as well as apparently sometimes asserted to be in behalf of all the bondholders (amended complaint, caption; paragraphs 11, 13, 21 and 26; Garfield affidavit, last paragraph, p. 4, and paragraph 2, p. 5; Diegnan affidavit, paragraph 3, p. 2, and paragraph 9, p. 4. See also plaintiffs' brief, pp. 1, 2, 9, 12).

After the 1937–38 defaults White-Weld (fiscal agent of the bonds, amended complaint, paragraph 11; Diegnan affidavit, p. 2, paragraph 3) brought suits in Argentina. In these they sought recovery of the entire principal and such interest as was then in default. It was those suits which culminated in the judicial settlement previously referred to (Diegnan, paragraph 4, p. 2, paragraphs 5 and 6, pp. 3–4). After the settlement White-Weld furnished bondholders written information on the subject. Pursuant to the settlement and a White-Weld statement, additional payments were made to bondholders and the accepting bonds, including those of the plaintiffs, were so marked.

In March, 1942, approximately 75% of the claims then represented by the outstanding bonds accepted the Young & Co. offer and received $872.27 per bond. Included among the acceptors, who thus sold their bonds to Young & Co., were the plaintiffs (Diegnan, paragraphs 7 and 9, p. 4).

It was in August, 1942, that White-Weld, the fiscal agent, devoted the moneys which came to it from the Argentina bank toward making further payments on the bonds.

The result is that, in accordance with the several plans described and if the proceedings were valid and binding, all the bonds have been completely paid off. On (paragraphs 12, 17–19, 21, 22, 24–27), in substance, the plaintiffs charge that such payments were pursuant to a conspiracy to defraud the bondholders and (paragraph 19) that such conspiracy to defraud was in violation of the Securities Act of 1933, 15 U.S.C.A. § 77a et seq. and the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., as well as of the regulations thereunder; whereby, as further alleged, they suffered damages in the amount sued for (paragraph 28).

In the interest of brevity, except where fully given, White, Weld & Co. has been and usually later will be called White-Weld; F. J. Young & Co. Inc., called Young & Co.; F. J. Young, called Young.

Each motion will now be taken up in turn.

I. The first motion asks for dismissal of the amended complaint. The grounds assigned are that (1) this is not a proper class action and (2) the plaintiffs do not properly and adequately represent the for-

mer bondholders they claim to represent. It is said that the motion is pursuant to rule 12(b) (6) and rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

I might easily, and if time were available I should gladly, indulge in a bit lengthy discussion of the motion. I prefer, however, to confine myself to what impresses me as controlling and about most of the numerous other possible aspects to be rather brief. I think also that at this stage perhaps it is better to refrain from going substantially beyond what is necessary to the determination of the chief question presented.

■ Perhaps it may be suggested that reference to rule 12(b) (6) calls for consideration of whether the amended complaint states "a claim upon which relief can be granted." It is plain, however, that, outside of what arises under rule 23, an inquiry into the sufficiency of the claim as a pleading is not directly demanded. If it had been the purpose of counsel for White-Weld to bring up a question under rule 12 (save perhaps as the portion of the rule mentioned may be deemed incidentally to comprehend the question in express terms raised under rule 23), then (as I feel) there should have been an unequivocal challenge of the pleading on the ground that it fails to state a cause of action.

Accordingly, I shall pass to the class action problem. Neither in their brief have counsel for White-Weld, in connection with the first motion, concerned themselves, nor (so far as I recall) did they at the oral argument concern themselves, with anything except that problem.

■ From the standpoint of the court, as well as from the standpoint of litigants, where numerous persons have claims of such a nature that they can fairly be tried together—and thus time and expense be saved—manifestly it is desirable that it be done. The court, however, does not have arbitrary control over what shall be the plan for handling such a matter; and, in the absence of consent by all concerned, so far as I know, the only practical means by which, in a case of that kind, the end can be accomplished, in a district court of the United States, is for those constituting the class to bring themselves within the provisions of either rule 23 or rule 24 of the rules of civil procedure.

There has been no application, under rule 24, by anyone to intervene. So as yet no help can be gotten from that source.

■ In the case at bar plainly the right "sought to be enforced" is not, within the meaning of clause (1) of rule 23(a), either "joint" or "common" or "secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it." So also, within the meaning of clause (2) of that rule, it is not "the object", nor is it one of the objects, of the instant action to adjudicate claims "which do or may affect specific property involved in the action." In consequence, the plaintiffs cannot avail of either clause (1) or clause (2) of subdivision (a) of rule 23. Cf. Ayer v. Kemper, 2 Cir., 1931, 48 F.2d 11, 14, certiorari denied 284 U.S. 639, 52 S.Ct. 20, 76 L.Ed. 543; Hunter v. Southern Indemnity Underwriters, D.C.E. D.Ky.1942, 47 F.Supp. 242, 243.

In these circumstances, if there be any device for conducting this case as a class action, then, unless intervenors join in, the court has no power by which it can aid the plaintiffs to secure their wish unless it exist by virtue of clause (3) of subdivision (a) of rule 23. Accordingly, the solution of the problem is reduced to an inquiry exclusively under clause (3) referred to.

For the purpose of considering whether the plaintiffs have brought themselves within clause (3), I shall assume that they have fulfilled all the prescribed conditions except one. I think that is as far as I should go at the moment. If there be—as there may be—other phases of the dispute, for a reason that will be stated, discussion of them should be postponed.

The single excepted condition embodied in clause (3), now to be taken up, is whether the plaintiffs are shown to be "such * * * as will fairly insure the adequate representation of all" of the class to which they belong. In responding to this inquiry the parties squarely disagree. It is around the answer to it that the debate has hinged.

■ Parenthetically it may be remarked that the group defined in clause (3) of rule 23(a) has been dubbed as "spurious." The assignment of the name, however, is not a criticism. It is merely an effort to employ a descriptive nomenclature which will discriminate this third group from the first and second groups, respectively, cov-

ered by clauses (1) and (2). Cf. Central Mexico Light & Power Co. v. Munch, 2 Cir., 1940, 116 F.2d 85, 88; Hackner v. Guaranty Trust Co. of New York, 2 Cir., 1941, 117 F.2d 95, 98, certiorari denied 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520; Pennsylvania Co. for Insurances, etc., v. Deckert, 3 Cir., 1941, 123 F.2d 979, 983.

■ Coming now to the merits of the controlling question, after reflection I have concluded that it is my duty to sustain the motion to dismiss the amended complaint as a class action. The reasons for this view are as follows:

(1) The burden is upon plaintiffs, who undertake to sue in behalf of a class, to allege in their complaint and, in conformity with the allegations, to prove (Johnson v. Riverland Levee Dist., 8 Cir., 1941, 117 F. 2d 711, 714, 134 A.L.R. 326) (or possibly, in the alternative, to show by independent evidence, Pelelas v. Caterpillar Tractor Co., 7 Cir., 1940, 113 F.2d 629, 632; Pennsylvania Co. for Insurances, etc., v. Deckert, 3 Cir. 1941, 123 F.2d 979, 984; Pacific Fire Ins. Co. v. Reiner, D.C.E.D.La., 1942, 45 F.Supp. 703, 708) that the court's recognition of them in the representative capacity they assume will "insure the adequate representation" of all within the class. For example, in the Pelelas case the court said (113 F.2d at page 632): "It is a condition precedent to the existence of the right to maintain a class action that the court find that the plaintiff's suit will fairly insure the adequate representation of all. This raises a question of fact for the trial court upon which it passes judicially."

As already indicated, "when [as prescribed in rule 23(a) (3)] the character of the right sought to be enforced for * * * the class is * * * several [as it is here], and there is a common question of law or fact affecting the several rights and a common relief is sought," it is obviously desirable that a class suit be maintained. On the other hand, it is important, and indeed imperatively demanded if a judgment to follow is to be valid, that "adequate representation of all" embraced in the class be fairly insured. This is needful because its absence would render the result abortive. Moreover, if the trial ended in favor of a defendant, and the proceeding had been without the authorization ...owledge on the part of one for whom plaintiffs had assumed to act, the defendant would not be protected against a suit for the same asserted liability on the same cause of action. Hansberry v. Lee, 311 U.S. 32, 41–44, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741.

It is on the account stated, as I believe, and certainly may be on that account, that scrupulous care is demanded of a trial court in ascertaining whether plaintiffs include in their representation some whom it was not proper for them to include.

I have studied the amended complaint and the affidavits and they do not convince me that the plaintiffs are entitled to act for the holders (other than Young or Young & Co.) of all stamped bonds, much less for the unstamped bonds in addition.

Without trying to analyze all the material, the following things do appear:

■ (1) The plaintiffs owned only $5,000 each of stamped bonds. The par total of $10,000 of the bonds they held were but a small fraction of 1% of the total of the stamped bonds. The allegations of the amended complaint are ambiguous with regard to in whose behalf the plaintiffs are undertaking to sue. My guess is, and the weight of the allegations lead me to believe, that they wish to sue in behalf only of the holders of stamped bonds; yet, as I read the amended complaint (paragraphs 14, 19, 28), they sometimes allege that they sue for the holders of all bonds and at times (paragraphs 14, 17, 19, 21, 22, 25, 26; prayer) leave the matter in doubt.

■ (2) There are frequent references in the amended complaint to bondholders (in whose behalf plaintiffs sue) whose situation is "similar" to that of the plaintiffs; but that is not an allegation of fact. No reader of the document, with confidence, can tell what it means. So also the plaintiffs label their suit as "representative"; but, as was said in Pacific Fire Ins. Co. v. Reiner, D.C., 45 F.Supp. 703, heretofore cited, at page 708, so (with respect to the present case), I may say: "A suit is not truly a 'representative suit' merely because the plaintiff, as here, so designates it; whether it is depends upon the attending facts."

■ (3) Again, I have struggled in vain to make sure from the amended complaint what payments have been made for various of the bonds, so as to form an estimate of what (if any) injury has occurred that the plaintiffs claim to have been suffered by a portion of the bondholders in whose behalf they purport to act. Ap-

parently some of them have been fully paid; and certain it is, according to the allegations of the amended complaint, that at various dates, and from time to time, since the first default on the bonds in 1932, sundry instalment and interest payments have gone to the bondholders (paragraphs 17, 19, 21, 25, 28). If there were merely involved a question of how much the bondholders would be entitled to (in the event of recovery), the doubt could probably be resolved by obtaining information through a bill of particulars; but much more is involved: the very gravamen of several charges of fraud turn (wholly or partly) on how large or how small were numerous of the payments which were made at various dates.

■ (4) According to the contention of White-Weld, the bondholders as a whole or at least many of them have been paid off in full and have parted with all their bonds. On the other hand, the plaintiffs argue that the bondholders have been induced, through misrepresentation or suppression of facts, to accept less than was owing to them. As bearing on that, by way of summary, I think I cannot better describe the essence of what is shown by the evidence to have happened in the case at bar than to quote from the opinions in two cases.

In the first of these, Johnson v. Beneficial Loan Soc., D.C.D.Del.1940, 34 F. Supp. 392, 395, the court wrote as follows: "The rights of each former holder and of each present holder of a certificate of indebtedness and profit sharing certificate depend upon different questions of fact, such as, when the holder acquired his certificates, how long he held them, what was paid to him while he held them and what the profits of defendant were while he held them, etc."

So in Hunter v. Southern Indemnity Underwriters, D.C.E.D.Ky.1942, 47 F.Supp. 242, 244, a statement was made as follows: "Liability of the defendant for the nature of relief herein sought, if any, runs severally to each of the bondholders and depends upon facts and circumstances peculiar to each individual case. So far as disclosed by the bill of complaint, the only interest in common among the numerous bondholders is their common interest in some of the questions of law or fact involved. Without more, no judgment or other proceeding herein could be binding

upon or affect in any way the rights of any persons other than those who are or may become actual parties to or participants in the litigation. Absent bondholders would be entirely free to deal with their own rights in their own way. To entitle plaintiff to stand in judgment for them or to bind them by representation, the requirements of due process are more exacting. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741. * * *."

■ An affidavit has been furnished substantially to the effect that the plaintiffs are trustworthy. I assume that to be true; but my conclusions rest and under rule 23 must be based on grounds wholly apart from personalities.

For the reasons assigned I hold that the condition precedent to maintenance of a class action under rule 23(a) (3) has not been established. Because of this defect (as I see it), the amended complaint must be dismissed as a class suit. However, this will be with leave to the plaintiffs, within a period to be prescribed in the order hereon, to serve a second amended complaint.

To avoid misunderstanding, let me say that by such leave I intend that the alternative shall be open to the plaintiffs either (1) to convert the action into one entirely in their own behalf individually or (2) if they think the facts so warrant consistently with what I have said above, to endeavor to reframe their pleading into a class action that keeps within the limitations prescribed therefor in rule 23 as I have construed it.

■ II. The second motion asks that, pursuant to rule 12(e), the plaintiffs be required to make the amended complaint more definite and certain with respect to six items designated as (a) to (f). I think the moving party would be entitled to this relief and I should grant it but for the readiness of the plaintiffs (stated at the oral argument and repeated in their brief, p. 17, as well as in the Garfield affidavit, pp. 5 and 6, promptly to furnish the information called for in a bill of particulars. This seems to me entirely satisfactory (Cf. Tully v. Howard, D.C.S.D.N.Y., 1939, 27 F.Supp. 6, 7), and, so far as I can recall, no objection has been interposed by the moving party.

Accordingly, unless counsel call my attention to some obstacle, the substitute offered will be accepted and the second motion will be denied.

■ III. The third motion is that the plaintiffs be required, pursuant to rule 10 (b), separately to state and number the causes of action alleged in the amended complaint. As I see it, however, only one cause of action is alleged and this is a conspiracy by the defendants to defraud, in furtherance of which they violated the Securities Act of 1933, the Securities Exchange Act of 1934 and regulations pursuant thereto; and thereby (as is claimed) the bondholders were led to part with their bonds for sums less than were actually owing to them. In view of but a single cause of action being counted on (Cf. Broomfield v. Doolittle, D.C.S.D.N.Y.,1942, 2 F. R.D. 517, 518) the third motion must be denied.

■ IV. The fourth motion asks that the plaintiffs be required to post a bond as security for costs. This is based on the ground, as shown by the amended complaint (paragraph 1), that the plaintiffs are non-residents of New York. For many years the practice has prevailed in this district of non-residents suing in this court being compelled, on demand, to give security for costs. The power to require the security is fully sustained by the authorities (Cavicchi v. Mohawk Mfg. Co., D.C.S.D. N.Y.,1939, 27 F.Supp. 981, 982; Peltz v. Carolina Bagging Co., D.C.S.D.N.Y., 1 F. R.D. 779, 780. Cf. Minneapolis Gasoline & Fuel Co. v. Ethyl Gasoline Corporation, D.C.S.D.N.Y.,1941, 38 F.Supp. 454. See also Leake v. New York Cent. R. Co., D. C.N.D.N.Y.,1939, 26 F.Supp. 416), and, as I see it, no good excuse for not giving the security has been stated.

In consequence, the fourth motion will be granted and the amount of the bond is fixed at $250.

V. I wish to add a few comments:

■ (1) In the amended complaint, paragraphs 10, 12, 13, 17, 18, 19 and 26, reference is made to three exhibits to the original complaint. I doubt whether subdivision (c) of rule 10 contemplates this type of cross reference in an amended pleading to a previously abandoned pleading. Moreover, it is quite inconvenient to the court to have to send to the Clerk's office for a file in order to learn the contents of exhibits attached to the discarded pleading. Likewise I should think it would be inconvenient to the plaintiffs themselves, as well as to the defendants, to have to go outside of an amended pleading for a statement of a material part of its claim.

■ There is another aspect: It strikes me that the requirement in rule 8 (a) (2), that a complaint show "that the pleader is entitled to relief," is infringed by omission from the amended complaint of any material portion of what the pleader relies on.

Accordingly, while I do not require, I suggest, that when drawing a second amended complaint, if the plaintiffs desire to rely on any exhibit to the original complaint, it be set out in full as an integral part of the new amended complaint.

(2) While I do not require, I suggest, that, in furnishing the information called for as to the contents of statutes and regulations on which the plaintiffs rely, it would be much in their own interest, as well as of service to their opponents and to the court, that they include brief extracts of the precise parts of the relevant statutes and regulations. In the statement to me of the provisions of the statutes and regulations they count on, much that is wholly irrelevant has been included. I suggest, therefore, that exact short extracts be used instead of unduly extensive quotations.

(3) In his brief one of the counsel stated that I am vested with authority to request the Securities and Exchange Commission to intervene in this case and suggested that I do so. I am not familiar with the statutory provision referred to and, were this matter again to come before me, I should be glad to have the provision of law on the subject called to my attention. However, I would deem it inappropriate for me to communicate with the Commission at this stage. It would be better to wait and see what is contained in a further amended pleading. Then, if either side wants to bring up the matter again, it occurs to me that it might be better to move for it in the regular way in the motion part.

Motions granted in the respects and on the terms above indicated, and denied in the other respects indicated. Settle order accordingly on two days' notice.