**SPEED et al. v. TRANSAMERICA CORPORATION.**

Civil Action No. 480.

District Court, D. Delaware.

Sept. 5, 1945.

Frank & Gonnet, of New York City, and Daniel O. Hastings (of Hastings, Stockly and Layton), of Wilmington, Del., for plaintiffs.

Hugh M. Morris and Edwin D. Steel, Jr. (of Morris, Steel & Nichols), all of Wilmington, Del., for defendant.

LEAHY, District Judge.

This is a class action by plaintiffs, former minority holders of Class A and Class B stock of Axton-Fisher Tobacco Company, against defendant, a majority stockholder of Axton-Fisher. Plaintiffs seek to recover damages resulting from their sale to defendant in November, 1942, of 2350 shares of Class A stock and 1235 shares of Class B stock, pursuant to a written offer which defendant made at that time to all holders of Class A and Class B stock. Plaintiffs seek damages for the difference between the true liquidating value of the stock which they sold to defendant and the amount which they received from defendant for their shares. Plaintiffs ask recovery, not only in their own right, but also on behalf of all other former holders of Class A and Class B stock of Axton-Fisher who were fraudulently induced to sell their shares to the defendant subsequent to November 12, 1942, for an inadequate price.[1]

---

[1] Thus, paragraphs 9 and 10 of the complaint, pertaining to the first cause of action, allege:

"9. This action is brought by the plaintiffs for themselves and on behalf of all other former holders of Class A and Class B shares of Axton-Fisher who were fraudulently induced to sell their shares to defendant, subsequent to November 12, 1942, for an inadequate price, as hereinafter set forth.

"10. That the total number of B shares in the class represented by the plaintiffs is in excess of 6,172 shares, and the total number of A shares in the class represented by the plaintiffs is in excess of 13,741 shares; that the persons constituting said class are so numerous as to make it impracticable to bring them all before the Court; that the plaintiffs formerly owned 1235 shares of the Class B stock and 2530 shares of the Class A stock of Axton-Fisher Tobacco Company and sold same to Transamerica; that as plaintiffs believe, persons holding or representing a substantial number of said Class B and Class A shares will become parties to this suit by intervention before trial; that plaintiffs are advised and believe that inquiry has been made of all persons in the same class with them who are known to them, and that said persons indicated their approval of the suit being prosecuted by plaintiffs, and that the plaintiffs fairly insure the adequate representation of the entire class."

Similarly, the complaint, in paragraph 1 of the second cause of action, alleges:

"This action is brought by plaintiffs for themselves and on behalf of all other former holders of Class A and Class B shares of Axton-Fisher who were induced to sell their shares, subsequent to No-

The complaint purports to state two causes of action: the first is a common law action of deceit; and the second is based upon an alleged violation of Rule X–10B–5 of the SEC[2] (promulgated pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j). Since Paragraph 3 of the second cause of action embodies by reference all the allegations of the first cause of action, it is clear that the transactions which plaintiff relies upon to establish a violation of Rule X–10B–5 are almost entirely identical with the transactions which plaintiffs allege as a basis for their common law action of deceit. Hence, the complaint will be treated as though but one cause of action were alleged.

The main facts giving rise to this suit

are detailed in the opinion in Zahn v. Transamerica Corporation, D. C., 63 F. Supp. 243, and Geller v. Transamerica Corporation, D.C.Del., 53 F.Supp. 625. The complaint in this case, however, contains other broad allegations of fraudulent conduct. It is charged, in general, that defendant, either itself or through its control, made false representations in certain press releases, letters to stockholders, and before the SEC. Representative averments of the complaint are set forth in the margin.[3] In the view which I take of the case, the numerous acts of misrepresentation and concealment referred to in the complaint need not be specifically discussed at this stage of the proceeding.

The matter comes before the court

---

vember 12, 1942, by reason of the fraud of concealment and misleading statements made to them by defendant in violation of Chapter [section] 10(b) of the Securities Exchange Act of 1934, Title 15 U.S.C.A. 78(j) [78j] and Rule X–10B–5, adopted by the Securities and Exchange Commission pursuant thereto on May 21, 1942."

[2] It reads as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of mails, or of any facility of any national Securities exchange

"(1) to employ any device, scheme, or artifice to defraud,

"(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

[3] "44. Upon information and belief, plaintiffs aver that defendant, Transamerica, did not desire to disclose to the Securities Commission through Axton-Fisher its intentions with respect to the payment of dividends on and the redemption of the 6% prior preferred and Class A common stock and with respect to the holding or disposition of the Class B common shares then owned by it; that defendant thereupon devised a fraudulent scheme to acquire at the expense of the minority stockholders of Axton-Fisher, their holdings of stock of said Axton-Fisher at the lowest pos-

sible price and at a price greatly less than the real value thereof with the improper intention thereafter, by means of a merger or liquidation, to capture for itself, and at the expense of the minority stockholders of Axton-Fisher, the huge increase in the value of the tobacco inventory which it had been concealing from the minority stockholders of Axton-Fisher.

"45. Upon information and belief, plaintiffs aver that in pursuance of said scheme, defendant caused Axton-Fisher to withdraw its application for registration, publicly assigning false reasons for such withdrawal and well knowing that the effect of the withdrawal, based upon the false reasons assigned, would tend sharply to decrease the market price of Class A and Class B stocks of Axton-Fisher. The false statement publicly assigned for the withdrawal was stated to be that 'in view of changed conditions and the decline in the market prices of preferred stocks,' Transamerica refused to purchase the stock so registered; that the effect of the withdrawal of the application did in fact serve to decrease sharply the market price of the Class A and Class B common stocks of Axton-Fisher.

"46. Further, in pursuance of said scheme, defendant caused Axton-Fisher to furnish a statement to the press, under date of May 7, 1942, reciting the same reason for the withdrawal of the application for registration as above stated. Copy of said press release is attached hereto and marked Exhibit 'E'."

"48. Plaintiffs allege that the statements in said letter were false and misleading in that the offer was limited to persons who owned stock of record or actually owned it at the close of business October 31, 1942; that the offer was

upon motions of defendant, consolidated under Rule 12(g), Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to dismiss the complaint; or, failing that, for a more definite statement or for a bill of particulars; and to state the several claims asserted in separate counts.[4] The motion specifically raises the following questions: (1) Should the complaint be dismissed upon the ground that although it purports to allege a class action, the nature of the case does not bring it within the purview of Rule 23; (2) in an action sounding in fraud and deceit, is defendant entitled to have plaintiff specify the particular fraudulent and misleading statements and omissions of material facts by which each of the plaintiffs was misled into selling shares of stock to defendant; (3) will a clear presentation of the matters set forth in the complaint be facilitated by requiring plaintiffs to allege in a separate count each claim which is founded upon a separate transaction or occurrence?

1. The motion to dismiss the complaint should be granted. It is clear from the complaint that plaintiffs purport to state a class action. But it is equally clear that appropriate class allegations in a complaint will not give it a class status unless the inherent and intrinsic character of the action is such as to warrant plaintiffs bringing it in a representative capacity. Oppenheimer et al. v. F. J. Young & Co., Inc., et al., D.C., 3 F.R.D. 220, 224. There the court said: "* * * So also the plaintiffs label their suit as 'representative'; but, as was said in Pacific Fire Ins. Co. v. Reiner, D.C., 45 F.Supp. 703, heretofore cited, at page 708, so (with respect to the present case), I may say: 'A suit is not truly a "representative suit" merely because the plaintiff, as here, so designates it; whether it is depends upon the attending facts.'" This action is brought by plaintiffs and the other persons on behalf of whom plaintiffs purport to sue to recover damages because they were "fraudulently induced to sell their shares to defendant, subsequent to November 12, 1942, for an inadequate price, as hereinafter set forth.", and is based on a large number of false

---

to continue only until the close of business on November 27, 1942, and that unless 24,000 shares of the A stock and 18,000 shares of the B stock were offered Transamerica might not carry out its offer to buy said stock at the prices named.

"By reason of said misleading statements the plaintiffs and other minority stockholders were led to believe that Transamerica was making a special offer and limiting it to those who owned stock on October 31, 1942, and those who accepted the offer on or before November 27, 1942, and that Transamerica was primarily interested in purchasing not less than 24,000 shares of Class A and 18,000 shares of Class B stock of Axton-Fisher, which facts, together with the offer of a price or prices in excess of the then market price for said stocks misled the plaintiffs and other minority stockholders into believing that Transamerica had a special interest in obtaining a certain number of shares of stock and that such quantity of stock had a greater value to Transamerica than it would have in the possession of minority stockholders; whereas, in fact, defendant at the time of mailing said letter was desirous of purchasing all of the outstanding Class A and Class B stock from minority stockholders, or as many of said shares as said minority stockholders could be induced to sell, in order that it might benefit at the expense of minority stockholders upon the huge appreciation in tobacco inventories then being concealed from plaintiffs and other minority stockholders.

"Plaintiffs aver that instead of pretending that the offer made by defendant in said letter was confined to owners of stock on October 31st, 1942, and to those who accepted the offer on or before November 27, 1942, and that Transamerica would not be bound by the offer unless there was tendered in response to its offer 24,000 shares of the Class A and 18,000 shares of the Class B, it was the duty of Transamerica to disclose in said letter to the minority stockholders its desire to purchase as much of said stock at said prices as the stockholders were willing to tender, and its reasons therefor."

"53. Plaintiffs were deceived by the various fraudulent and misleading statements and the omission of material facts in statements which defendant caused to be sent out, into selling their stock at the price of $40.00 per share for the A stock and $12.00 per share for the B stock, in response to the offer contained in the sale letter and the publicity to said offer given by the defendant."

[4] Precedent for this procedure is found in Oppenheimer et al. v. F. J. Young & Co., Inc., et al., D.C., 3 F.R.D. 220.

and fraudulent statements. Now the question is whether plaintiffs have brought themselves within the requirements of Rule 23(a) (3).[5] I think they have failed to meet the necessary requirements for several reasons. The persons comprising the class are numerous and some purchases antedated and others followed the issuance of many of the alleged fraudulent statements. Moreover, some of the stockholders who saw the statements complained of probably placed no reliance upon them, but in purchasing or selling their stock acted upon independent advice received from persons who may or may not have relied upon the alleged misrepresentations or acts of concealment attributed to defendant. It is evident, then, that although the situation of some of the stockholders may have been the same, the circumstances under which many of them acquired and sold their stock varied greatly in each individual instance. The suit at bar fails by a wide margin to come within the cases holding that class relief was appropriate; Everglades Drainage League v. Napolean B. Broward Drainage Dist., D.C.Fla., 253 F. 246; Gramling v. Maxwell, D.C.N.C., 52 F. 2d 256; Skinner v. Mitchell, 108 Kan. 861, 197 P. 569; Duke of Bedford v. Ellis (1901) A.C. 1. Not only have plaintiffs failed to bring themselves within the rule of these particular authorities but other authorities make it perfectly clear that the present suit cannot be maintained as a class action. In Willcox v. Harriman Securities Corporation, D.C., 10 F.Supp. 532, 534, plaintiffs attempted to bring a class suit for rescission and exchange of stock allegedly induced by fraud. In holding that such an action could not be maintained, the court said: "As to the exchange of stock the plaintiffs' rights are personal to them alone. They cannot maintain a suit in behalf of others said to have been similarly defrauded. In such a case there may be enough similarity in the issues to warrant several plaintiffs joining in one suit for rescission (see Akely v. Kinnicutt, 238 N.Y. 466, 144 N.E. 682), but the maintenance of a class suit is quite a different thing. The issues are not identical, and even if they were there is no

common subject-matter. Each defrauded person is interested in his own stock, not in that of any other victim. On the authorities it is settled that a representative suit by one of numerous defrauded persons in behalf of himself and others will not lie." In Railway Express Agency v. Jones, 7 Cir., 106 F.2d 341, the court said: "A class suit may not be maintained where each claimant of the class asserted a separate claim based on individual and separate fraudulent representations." See also Michelsen v. Penney, D.C., 10 F.Supp. 537; Cherry v. Howell, D.C., 4 F.Supp. 597; Bickford's v. Federal Reserve Bank of New York, D.C., 5 F.Supp. 875; Johnson v. Beneficial Loan Society, D.C.Del.1940, 34 F.Supp. 392. Cases allowing the action in similar situations, illustrated by Independence Shares Corporation v. Deckert, 3 Cir., 108 F.2d 51, are distinguishable in that in those cases the misrepresentations were specifically alleged to be common to all members of the class. Such a situation is obviously not present here.

Although this is not a proper class action, this does not necessarily mean that defendant is entitled to have the whole complaint dismissed. Where a plaintiff in a suit states a good cause of action on his own behalf and a defective class action, a number of courts have granted defendants' motions to dismiss with leave to the plaintiff to amend the complaint so as to allege merely an individual action on his own behalf. Bickford's v. Federal Reserve Bank of New York, supra, 5 F.Supp. 875; Cherry v. Howell, supra, 4 F.Supp. 597; Oppenheimer et al. v. F. J. Young & Co., Inc., et al., supra, 3 F.R.D. 220. The remaining question is whether each plaintiff has, in fact, stated a good cause of action on his own behalf.

2. Defendant's motion for a more definite statement or for a bill of particulars as to the matters alleged. It is obvious from the above recited allegations of the complaint that they are far too indefinite. In paragraph 53 of the complaint, for example, it is alleged that "Plaintiffs were deceived by the various fraudulent and misleading statements and the omission of ma-

---

5 This Rule reads as follows:

"If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is * * *

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

terial facts in statements which defendant caused to be sent out * * *." This very clearly fails to meet the particularization required by Rule 8(e). Plaintiffs must apprise defendant of the precise statements by which each plaintiff was deceived. This rule is supported in principle because non constat a particular defendant did not know of the alleged fraudulent statement or if he did know of it, he may not have relied on it. This rule is likewise supported by authority; Velthuysen v. Hoboken Land & Improvement Co., 9 A.2d 634, 17 N.J.Misc. 376; Zimmern v. Blount, 5 Cir., 238 F. 740.

I accordingly conclude that each plaintiff has failed to state specifically which of the statements referred to were relied on by him.

3. The motions to dismiss the complaint should be granted because plaintiffs have not stated a class action and they have not alleged their individual actions with the particularity required by Rule 8(e). Thus, it is unnecessary to pass on defendant's motion to require plaintiffs to state their several claims in separate courts. Leave is, however, granted to plaintiffs to serve an amended complaint, within ten days after the service of the order to be entered hereon, on the attorney for defendant; otherwise, the complaint will be dismissed.