**FISTEL v. CHRISTMAN et al.**

Civ. Acts No. 9178.

United States District Court
W. D. Pennsylvania.
Oct. 27, 1952.

Harold H. Harter, Pittsburgh, Pa., for plaintiff Morris J. Levy, New York City, of counsel.

John G. Buchanan, Jr., David B. Buerger, and J. S. Loynd, of Smith, Buchanan, Ingersoll, Rodewald & Eckert, Pittsburgh, Pa., for defendant Christman.

William B. Paul, of Paul, Lawrence & Rock, Pittburgh, Pa., for defendant Follansbee Steel Corp.

MARSH, District Judge.

Plaintiff brought this suit under the provisions of Sections 16(b) and 27 of the Securities Exchange Act of 1934, 15 U.S.C.A. §§ 78p(b) and 78aa, and other relevant sections.

The complaint alleges that between June 8, 1948, and November 1, 1948, a period of less than six months, the individual defendant purchased 21,088 shares, more or less, of Follansbee Steel Corporation common stock and sold 5,200 shares, more or less, realizing profits thereon, which did not inure to and were not recovered by the issuing corporation.

The defendant Christman, hereinafter called defendant, moved to dismiss under Section 12(b), Fed.Rules Civ.Proc., 28 U.S.C., on the grounds of lack of jurisdiction, insufficiency of process and of service of process, and failure to state a claim upon which relief can be granted, and in the alternative, for summary judgment pursuant to Rule 56, F.R.C.P.

Affidavits were filed and the court took testimony on the issue of whether the plaintiff had proceeded with due diligence to secure service upon the defendant. Upon the evidence submitted we make the following

Findings of Fact

1. The complaint was filed October 30, 1950, which was the next to the last day to file the suit under the two-year Statute of Limitations contained in the Act.[1]

---

1. Plaintiff contends that the period of limitation fixed by the statute would not have expired until December 3, 1950, because December 3, 1948, was the day upon

2. On December 26, 1950, almost two months after the complaint was filed, plaintiff's attorney gave directions to the United States Marshal to serve the summons upon defendant at his residence at 25 Roycroft Avenue, Mt. Lebanon, Allegheny County, Pennsylvania.

3. The Deputy Marshal called at defendant's home on December 26, 1950, but no one was there.

4. The defendant lead a normal life at his home and at his office in Pittsburgh from October 30, 1950, to December 6, 1950, and service could have been made at those places if any attempt had been made to do so during that period.

5. On December 7th the defendant and his family moved to his winter residence at 4138 North Bay Road, Miami Beach, Florida, where he lived until May 7, 1951.

6. From December 7, to December 25, 1950, and from January 1 to May 7, 1951, John Izatt and Anna Munson, servants of defendant, were in charge of and were living at defendant's Mt. Lebanon home, where they normally could have been reached by telephone or by a personal call. Both of them were absent from said home during the period from December 26 to December 31, 1950, inclusive, being confined to hospitals.

7. Around the 1st of January, 1951, the Deputy Marshal learned that the defendant was in Florida and that his address was 4138 North Bay Road, Miami Beach, Florida. This address was promptly transcribed in the Marshal's office in Docket 58, page 389.

8. Plaintiff, through his local attorney, had ample opportunity to learn defendant's Miami Beach address from the deputies in the Marshal's office, at the office of Federal Enameling & Stamping Company, from the servants of defendant at his residence in Mt. Lebanon, from David B. Buerger, Esq., the attorney for the defendant, and from Miami Beach telephone directories which are available in Pittsburgh.

9. Plaintiff's local attorney did not learn of defendant's exact Florida address, nor did he inquire or make any effort to obtain it.

10. Section 78aa of the Securities and Exchange Act, 15 U.S.C.A., provides that service may be made "wherever the defendant may be found."

11. From about May 7, 1951, until about July 14, 1951, defendant resided at his home in Mt. Lebanon, where he led a normal life and where service could have been made during that period.

12. On July 14, 1951, defendant and his family went to Europe for six weeks, returning to his residence in Mt. Lebanon on or about August 28, 1951.

13. On August 6, 1951, the Deputy Marshal called at defendant's residence in Mt. Lebanon. Anna Munson, the housekeeper, answered the door but refused to open the screen door, give her name, or accept the summons. The Deputy decided not to make service upon the housekeeper under these circumstances, although he had good reason to believe that defendant's residence was then occupied. He reported the facts concerning this call to his superior.

14. The Deputy Marshal testified that he made approximately four other visits to defendant's residence between December 26, 1950, and August 6, 1951, but no one answered the door. The Deputy kept no record of the times and dates of these visits.

15. From August 28 to September 14, 1951, the defendant was living at his residence in Mt. Lebanon leading a normal life, where service could have been made during that period.

16. On September 14, 1951, the Deputy Marshal made personal service of process upon the defendant at his home in Mt. Lebanon.

---

which the defendant Christman reported the stock transaction of November 1, 1948, to the Securities and Exchange Commission. We do not agree because Christman reported the transaction strictly in accordance with the Act. See Section 16(a), 15 U.S.C.A. § 78p(a).

17. At no time during the period from October 31, 1950, to September 14, 1951, was the defendant hiding or attempting to evade service of process.

18. Defendant had been served on October 23, 1950, with process in a suit filed in the Southern District of New York by the plaintiff. About the last of December, 1950, when he was in Florida, defendant was notified by his Pittsburgh attorney that a similar suit had been filed in the Western District of Pennsylvania. The Pittsburgh attorney inquired whether he should accept service of the Pennsylvania process, but the defendant refused to authorize the acceptance of service by his Pittsburgh attorney.

19. Plaintiff did not proceed with due diligence to serve the defendant with the summons for a period of ten and one-half months after the complaint was filed and after the statutory period of limitation had expired.

## Discussion

After this suit was commenced on October 30, 1950, by filing the complaint, Rule 4, F.R.C.P., the plaintiff failed to give directions to the Marshal to serve defendant for almost two months. Then for over four months next, even though plaintiff's attorney knew defendant was living in Miami Beach, Florida, for "four and a half months," plaintiff refrained for some undisclosed reason from having him served there. His exact Florida address was available upon simple inquiry but no inquiry was made. For the two months following defendant's return to his Mt. Lebanon residence in May, which was expected, no affirmative action or effort was taken by plaintiff or on his behalf to serve defendant and he was not served.

Thus, when defendant sailed for Europe on July 14, 1951, about eight and one-half

months had elapsed. In my opinion the failure to serve the defendant with process during that period at his home in Mt. Lebanon, at his office in Pittsburgh, or at Miami Beach [2] constituted a lack of diligence under the circumstances on the part of the plaintiff.

Because of the conflicting evidence I have not considered the probability that residence service also might have been effected at defendant's Mt. Lebanon home upon one of the adult servants, both of whom appeared to be responsible. They testified that one or the other was available night and day at this house during defendant's absence in Florida, except for one week from December 26, 1950 to January 1, 1951, when both were confined to hospitals.

Plaintiff argues that the Marshal lacked diligence in failing to find someone at defendant's Mt. Lebanon residence while defendant was in Florida, but this issue need not be decided since I do not find that plaintiff lacked diligence or was to blame for failing to effect residence service while defendant was in Florida.[3] In the omission to send the process to Florida is found the neglect of the plaintiff.

Of course, between August 6 and September 14, 1951, if plaintiff had kept informed, he could have directed the Marshal to leave the process with one of the occupants, as it is not disputed that the Deputy then knew that persons were living in defendant's Mt. Lebanon home and had reported the facts surrounding his attempt to serve the maid to his superior.

It was plaintiff's duty to prosecute the litigation with reasonable diligence and, through his attorneys, to keep advised of the actions and proceedings of the Marshal and inquire and take advantage of information obtained by his deputies. If plaintiff had done that in this case, service

2. Plaintiff knew that extra-territorial service was available in this type of suit because in a similar action he had filed against defendant in the District Court for the Southern District of New York process had been served upon defendant on October 23, 1950, in Allegheny Coun-

ty, Pennsylvania, by the Marshal for the Western District of Pennsylvania.

3. This observation is also applicable for the period beginning July 14 and extending to August 6, 1951, while defendant was in Europe.

could have been made in Pennsylvania or Florida within a reasonable time.

Although no similar local rule of court exists in this district, we are advised that in the Southern District of New York, where plaintiff's counsel practices, a rule provides that an action will abate after three months if service is not made, unless the time is extended by the court. We are advised that other local rules variously require service of process to be made "promptly" or within periods up to six months. Without valid excuse ten and one-half months seems to us to be unreasonable delay in view of these guides in other districts.

Moreover, it was plaintiff's duty, especially when substantive rights were involved,[4] to see that the defendant was served with process promptly in Pennsylvania or in Florida. Since the statute here was tolled two days before the suit was barred, plaintiff in effect is attempting to extend by ten and one-half months the period fixed by Congress for officially apprising the defendant that suit had been entered against him.

Where actual service is made after the statutory period has run, it must appear that due diligence was exercised by plaintiff; otherwise the service may be quashed and the complaint dismissed. Moore's Federal Practice, Vol. 2, page 736; Schram v. Holmes, D.C.E.D.Mich.S.D.1943, 4 F.D.R. 119. In the Eastern District of Michigan, as here, no time in which service must be made was fixed by the local rules of court and Judge Picard dismissed the action because six months had elapsed after the expiration of the statutory period. In the light of that precedent and under the circumstances here existing, we are convinced that plaintiff did not effect serv-

ice upon defendant with the required due diligence.

### Conclusions of Law

1. The court has jurisdiction of the subject matter of this suit.

2. The Statute of Limitations would have barred the action on November 1, 1950, if it had not been tolled by the filing of the complaint on October 30, 1950.

3. The plaintiff did not exercise due diligence in that he failed to procure service of process upon the defendant within a reasonable time after the statutory period of limitation had expired.

4. The service of process made upon defendant, C. E. Christman, on September 14, 1951, should be quashed and the action against him should be dismissed.

---

4. The Act which established the right to bring the instant suit also sets forth the period of limitations during which such suits must be brought. See Pennsylvania Co. for Insurances, etc. v. Deckert, 3 Cir., 1941, 123 F.2d 979, 985, where it was held: "It has been held almost universally that when a statute creating a new cause of action contains in itself a statute of limitations, the limitation imposed becomes an integral part of the right of action created by the statute and so limits it that an aggrieved person cannot maintain his suit after the time fixed by the statute has expired."