Henry C. MAXWELL, Jr., et al.

v.

COUNTY BOARD OF EDUCATION OF DAVIDSON COUNTY, TENNESSEE, et al.

Civ. A. No. 2956.

United States District Court
M. D. Tennessee,
Nashville Division.

Nov. 23, 1960.

WILLIAM E. MILLER, Chief Judge.

This cause came on to be heard before the Honorable WILLIAM E. MILLER, District Judge, on October 27, 1960, and prior days of the term, upon the entire record, oral testimony and exhibits without the intervention of a jury, brief and arguments of counsel, from all of which the Court finds and holds as follows:

## FINDINGS OF FACT

1. The plaintiffs, all of whom are Negro school children and their parents and are citizens and residents of Davidson County, Tennessee, filed this action on 19 September, 1960, seeking declaratory and injunctive relief against enforcement of the custom, practice and policy of the defendant, County Board of Education of Davidson County and its Superintendent of Schools, J. E. Moss, requiring racial segregation in the County Schools and refusing to admit certain of the plaintiffs to certain schools solely because of their race or color. Plaintiffs also prayed for an order requiring defendants to submit a plan for reorganization of the entire County School System into a unitary nonracial school system, including plans for elimination of racial segregation in teacher and other personnel assignments, school construction, and the elimination of any other discriminations in the operation of the school system or in the school curriculum which are based solely upon race or color.

2. The defendants, Frank White; S. L. Wright, Jr.; F. K. Hardison, Jr.; Ferriss C. Bailey; E. D. Chappell; Aubrey Maxwell; and Olin White, together comprise all the duly elected members of the defendant County Board of Education of Davidson County, Tennessee, and are sued in their individual and official capacities together with said Board of Education, which is sued as a continuous body or entity. Defendant, J. E. Moss, is the duly elected or appointed County School Superintendent and/or Superintendent of Public Instruction of Davidson County, and is sued in both his individual and official capacity. The Board of Educa-

Avon Williams, Jr., and Z. Alexander Looby, Nashville, Tenn., and Jack Greenberg, New York City, for plaintiffs.

Shelton Luton, Davidson County Atty., and K. Harlan Dodson, Jr., of Hooker, Keeble, Dodson & Harris, Nashville, Tenn., for defendants.

tion is vested with the administration, management, government, supervision, control and conduct of the public schools of said County, and defendant, J. E. Moss, as administrative agent for the Board, has immediate control of the operation of the County Schools, and serves as a member of the Executive Committee of the Board.

3. The defendants, acting under color of the laws of the State of Tennessee and County of Davidson, have pursued for many years and are presently pursuing a policy, custom, practice and usage of operating a compulsory racially segregated school system in and for said County. The racially segregated school system operated by defendants consists of a system of elementary, junior high, and high schools, limited to attendance by white children and negro children, respectively, of the County of Davidson. Attendance at the various schools is determined solely upon race and color. A dual set of school zone lines is also maintained. These lines are based solely upon race and color. One set of lines relates to the attendance areas for the Negro schools and one set to the attendance areas for the white schools. These lines overlap where Negro and white school children reside in the same residential area.

4. At the beginning of the September 1960, school term, the infant plaintiffs, Henry C. Maxwell, Jr., and Benjamin Grover Maxwell, made application individually and/or through their parents to defendants for admission or transfer to Glencliff Junior High School and/or Antioch High School, same being "white" schools which are nearer to their residence than Haynes High School, the "Negro" school they are required to attend, and were refused said admission or transfer solely on account of their race or color. At the same time, the infant plaintiffs, Cleophus Driver, Christopher C. Driver, Deborah Driver, and Deborah Ruth Clark, made application individually and/or through their parents for admission or transfer to Bordeaux Elemen-

tary School, a "white" school which is nearer to their residence than Haynes School, the "Negro" school they are required to attend, and were refused admission or transfer by defendants, solely on account of their race or color. Had these infant plaintiffs been white children, they would have been admitted or transferred to the said "white" schools to which they applied.

5. The infant plaintiffs, Jacqueline Davis, Shirley Davis, George Davis, Jr., Robert Davis, Rita Davis, and Robert Rickey Taylor, reside nearer to a Negro school which they have been attending, but some of them accompanied the other plaintiffs when they made application for admission to said "white" schools, and all of them join in this action because they allege that they are being denied their right to enjoy a nondiscriminatory public education by reason of the compulsory racially segregated public school system which defendants are maintaining and operating in and for Davidson County.

6. At a preliminary hearing on 26 September, 1960, this Court reserved judgment on motions by defendants to strike and/or dismiss those portions of the complaint complaining of segregated teacher and personnel assignment, but ordered the defendants to submit a complete and substantial plan which will accomplish complete desegregation of the public school system of Davidson County, Tennessee in compliance with the requirement of the Fourteenth Amendment to the Constitution of the United States.

7. Pursuant to said order of the Court, the defendants subsequently filed with the Court the following plan for desegregation of the school system:

PLAN

1. Compulsory segregation based on race is abolished in Grade One of the Davidson County Schools for the scholastic year beginning in September 1961, and thereafter for one additional grade beginning with each subsequent school year, i. e.,

for Grade Two in September 1962, Grade Three in September 1963, Grade Four in September 1964, etc.

2. A plan of school zoning based upon location of school buildings, transportation facilities and the most recent scholastic census, without reference to race, will be established for the administration of the first grade, and other grades as they are desegregated according to the gradual plan.

3. Students entering the first grade will be permitted to attend the school designated for the zone in which he or she resides, subject to regulations that may become necessary in particular cases.

4. Application for transfer of first grade students, and subsequent grades according to the gradual plan, from the school of their zone to another school will be given careful consideration and will be granted when made in writing by parents, guardians, or those acting in the position of parents, when good cause therefor is shown and when transfer is practicable and consistent with sound school administration.

5. The following will be regarded as some of the valid conditions for requesting transfer:

a. When a white student would otherwise be required to attend a school previously serving colored students only.

b. When a colored student would otherwise be required to attend a school previously serving white students only.

c. When a student would otherwise be required to attend a school where the majority of students in that school, or in his or her grade, are of a different race.

6. A plan of pupil registration to be held each Spring to aid in formulating necessary arrangements for the opening of schools in the Fall, such as available room, teaching aids, textbooks, pupil immunizations, zoning, and transportation facilities, will be continued.[1]

7. Transportation will be provided to all students that are eligible for bus service.[1]

8. Thereafter, the plaintiffs filed the following specifications of objections to said plan:

### SPECIFICATION OF OBJECTIONS TO PLAN FILED BY COUNTY BOARD OF EDUCATION OF DAVIDSON COUNTY

The plaintiffs, Henry C. Maxwell, Jr., et al., respectfully object to the plan filed in the above entitled cause on or about the 19th day of October, 1960, by the defendant, County Board of Education of Davidson County, Tennessee, and specify as grounds of objection the following:

1. That the plan does not provide for elimination of racial segregation in the public schools of Davidson County "with all deliberate speed" as required by the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States.

2. That the plan does not take into account the period of over six (6) years which have elapsed during which the defendant, County Board of Education of Davidson County, has completely failed, neglected and refused to comply with the said requirements of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States.

3. That the additional twelve (12) year period provided in said plan is not shown to be "necessary in the public interest" and "consistent with good faith *compliance* at the earliest practicable date" in accordance with the said requirement of the due process and equal protection clauses of the Fourteenth

1. This has been done for years.

Amendment to the Constitution of the United States.

4. That the defendants have not carried their burden of showing any substantial problems related to public school administration arising from:

a. "the physical condition of the school plant";

b. "the school transportation system";

c. "personnel";

d. "revision of school districts and attendance areas into compact units to achieve a system of determining admission to the public schools on a nonracial basis";

e. "revision of local laws and regulations which may be necessary in solving the foregoing problems"; as specified by the Supreme Court in Brown v. Board of Education (May 31, 1955) 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, which necessitate the additional time contemplated by their plan for compliance with the constitutional requirement of a racially unsegregated public educational system.

5. That the plan is manifestly a substantially exact copy of the "Nashville Plan" adopted by defendants without reference to the local conditions in Davidson County as a minimum plan predicated on subjective and mental fears of the defendants as to possible community hostility or friction among students, and is not supported by a showing of any objective administrative conditions or problems which legally justify its complete deprivation of the constitutional rights of plaintiffs and all other children now in school to an integrated education by projecting the bar of segregation into the next twelve years.

6. That the plan forever deprives the infant plaintiffs and all other Negro children now enrolled in the public schools of Davidson County, of their rights to a racially unseg-

regated public education, and for this reason violates the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States.

7. That the plan wholly ignores and fails to comply with the statement of this Court from the Bench on 26 September, 1960, holding that the individual plaintiffs "have been denied their constitutional and legal rights", and suggesting that they be accorded these rights by defendants voluntarily rather than by court order, in that under the plan the individual plaintiffs can never be admitted to an integrated school and are forever deprived of their rights to a racially integrated public education in Davidson County.

8. That the plan fails to take into account recent annexation by the City of Nashville of a large area of surrounding Davidson County resulting in the public schools of said County becoming a part of the City of Nashville School System, which latter School System is now desegregated from the first through the fourth grades.

9. That the plan fails to take into account the rights of the infant plaintiffs and other Negro children similarly situated and forever deprives them of their rights to enroll in and attend any technical or other special or vocational schools, summer courses and educational training of a specialized nature as to which enrollment is not based on location of residence.

10. Paragraph five (5) of the plan violates the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States in that said paragraph provides racial factors as valid conditions to support requests for transfer, and further in that the racial factors therein provided are manifestly designed and necessarily operate to perpetuate racial segregation.

11. That the plan contemplates continued maintenance and operation by defendants of "Negro" and "white" schools substantially designated by race, in violation of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States, in that it fails to make any provision for the reorganization of the entire County School System into a unitary, nonracial school system so as to include a plan for the assignment of teachers, principals and other school personnel, as well as school children, on a nonracial basis; for the allotment of funds, construction of schools and approval of budgets on a nonracial basis; and for the elimination of all other discriminations in the operation of the school system or in the school curriculum which are based solely on race and color.

WHEREOF, the plaintiffs pray:

1. That the Court grant their motions for temporary restraining order and preliminary injunction so as to require the immediate admission by defendants of the individual plaintiffs to the public schools of Davidson County, Tennessee on an unsegregated basis.

2. That the declaratory and permanent injunctive relief prayed for in their complaint be granted, said injunctive relief to be effective not later than the beginning of the Spring Semester or Term of the public schools of Davidson County in January 1961.

3. That the defendants be required by the Court to reorganize the entire County School System of Davidson County, Tennessee into a unitary nonracial school system, including all of the matters prayed for in the sixth prayer of the complaint filed in this cause.

9. At the hearing on said plan on 24 October 1960, the defendants offered, in support of the plan, the testimony of Mr. Ferriss C. Bailey, Chairman of the Special Committee of the Board charged with preparing the plan, who had been a member of the Board for several years and previously had been a member of the City of Nashville Board of Education, and who testified that the plan was prepared by the Staff, and that the Board accepted and approved the plan and that he thought it a wise plan. Mr. J. E. Moss, the County Superintendent for many years, testified as an expert that he believed the plan to be a wise and workable one; Mr. W. H. Oliver, Superintendent of Schools of the City of Nashville, testified as an expert that the Nashville grade a year "stair-step" plan initiated under Court order in 1957 had proved a wise and workable one for Nashville. In addition, the Attendance Officer, Psychologist and Transportation Officer of the County Schools, testified as to data relating to school population, pupil achievement levels and school bus transportation respectively, in the County School System. Defendants also introduced a zoning map and attendance schedule showing the projected maximum expected distribution of Negro school children in presently white County Schools under nonracial zoning. All of said staff members had several years experience in their respective positions in Davidson County, and were intimately acquainted with conditions in that county and all problems involved in desegregation therein.

10. In opposition to the plan, plaintiffs introduced the testimony of Dr. Herman Long, Director of the Department of Race Relations, American Missionary Association of the Congregational Church, and teacher of Sociology in Fisk University, Nashville, Tennessee, for several years, an expert in the field of race relations in the United States; Dr. Eugene Weinstein, Assistant Professor of Sociology in Vanderbilt University, Nashville, Tennessee, an expert in the field of child development, who has conducted a recent research study of attitudes of Negro parents involved in public school desegregation in the City

of Nashville, located within Davidson County, Tennessee; Dr. J. Masuouka, Professor of Sociology and Chairman of the Department of Social Science at Fisk University, Nashville, Tennessee for several years, an expert in the field of race relations among peoples of the world; and the plaintiffs, Henry C. Maxwell, Sr., Mrs. Annie P. Driver, and Mrs. Floy Clark (the latter by stipulation). The plaintiffs testified that they objected to the plan because it would prevent their children now in school from enjoying their constitutional rights to a non-racially discriminatory public education, that their children wanted to enjoy such an education now, and that they feel their children are being injured by the racially segregated education they are now receiving. The plaintiffs' aforesaid expert witnesses were of the opinion that desegregation could reasonably be effected in the Davidson County School System within one year; and that the pupil transfer provision contained in the proposed plan, as drafted, would necessarily tend to perpetuate segregation. However, these witnesses, although expert witnesses and outstanding men in their respective fields, have had no actual experience with or responsibility for the administration of the schools in Davidson County and lack the same intimate knowledge of local conditions possessed by defendants' witnesses.

11. This Court approved in the case of the City of Nashville a plan of gradual desegregation after considering the particular facts which prevailed in that case. This plan of gradual desegregation, according to the testimony in this case, has worked well in the City of Nashville and has proved to be a workable and a feasible plan of desegregation. It has proved to be, in the opinion of the Superintendent of City Schools, a very wise plan for this community.

12. As stated, the school authorities of Davidson County, including the members of the staff, are close to the situation in Davidson County, are more intimately acquainted with them and have more knowledge about them than any-one else could possibly possess and the primary responsibility rests with these authorities, whose prerogatives and rights should not be usurped by the Courts.

13. From the testimony in this case it is evident that:

a. A plan of gradual desegregation works with a minimum of difficulties in this community.

b. Practically all of the schools of Davidson County are or may be affected by a plan of desegregation for the reason that the areas populated by Negroes are greatly scattered throughout the County.

c. There has been a tremendous increase in the school population in Davidson County over the past several years, with the result that practically all of the school housing facilities are crowded or overcrowded and the teacher-pupil load is at a peak in the system.

d. The County school system operates a transportation system, which system is presently operated at peak capacity, and the bus drivers are solely charged with maintaining discipline on the bus, in addition to their other duties, so that any factor which increases or tends to increase disciplinary problems on the buses likewise increases the hazards to the safety of the pupils. Discipline among the pupils on the buses is increased with a mixing of the races, especially when such is commenced at grade levels above the first and/or first and second grades.

e. Because the children of the two races have not been intimately associated due to proximity of residences in the County, a great emotional impact will be experienced by the children of both races following desegregation of the schools.

f. Negro children in the higher grade levels who have not previously attended desegregated schools have an achievement level substantially below that of white children, and

such disproportion in achievement level increases in direct proportion to the grade of the child so that any complete desegregation, except upon a graduated basis, would create additional difficulties for the children of both races.

g. Any change of organization or plan in the school system, other than at the end of a school year or a school semester, would cause confusion and disruption of classes with an accompanying loss of teacher time and student time.

14. The school in the Bordeaux community, one of the schools where the plaintiffs have made application for enrollment, has been partially destroyed by fire, and the school population there is presently being cared for on a makeshift basis, with all existing facilities overtaxed. The Antioch School, one of the schools where plaintiffs made application for enrollment, is the most overcrowded school in the entire system, and the time consumed in traveling to the Antioch School by bus from the residence of these plaintiffs is as great as the time consumed by such plaintiffs in traveling by bus to the Haynes High School, to which they are presently assigned.

15. It is particularly desirable to have the school system of the City of Nashville and that of Davidson County operating on a parallel basis.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of this action, which is filed pursuant to Title 28, United States Code, Sections 1331, 1343, 2201 and 2202, and Title 42, United States Code Annotated, Section 1983, for injunctive and declaratory relief to redress rights of the plaintiffs secured by the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States and by the Act of May 31, 1870, Chapter 114, Section 16, 16 Stat. 144 (Title 42, United States Code Annotated, Section 1981).

2. This is a class action brought not only by the plaintiffs for their own benefit but also on behalf of all other persons similarly situated.

3. The Court at the outset considers the case with the established principle that compulsory racial segregation is unconstitutional and that the plaintiffs and those they represent are entitled to have their rights declared and enforced accordingly.

4. In approving a plan of gradual desegregation in the case of the City of Nashville, after considering the particular facts which prevailed in that case, the Court made the statement in substance that each case must be determined on its own facts and that a decision elsewhere in the United States may or may not be relevant depending upon the conditions, whether or not they were comparable to the situation which prevailed here, and that, after all, this was a problem which must be determined locally and in accordance with local conditions. That case was appealed to the Court of Appeals of this circuit, and was affirmed in a unanimous decision of that court. Thereafter, at a later date the Supreme Court of the United States refused to review it by denying certiorari, which left, insofar as this Court is concerned, the decision of the Court of Appeals in full force and effect as stating correct legal principles.[2]

5. This Court does not hold that automatically the Nashville Plan constitutes the plan which should be applied to Davidson County. The pertinent factors must be weighed and assessed, and if the factors are substantially similar, then the precedent of that case should guide the Court in the decision

2. Kelley et al. v. Board of Education of City of Nashville et al., 3 Race Rel.L.Rep. 651 (1958), aff'd 6 Cir., 270 F.2d 209, cert. denied 361 U.S. 924, 80 S.Ct. 293, 4 L.Ed.2d 240. See also Kelly v. Board of Education of City of Nashville, 159 F. Supp. 272.

of this case. If they are materially dissimilar, then that case would not apply. Considerable flexibility is involved in applying the controlling legal principle.

■ 6. The Court must decide the case in accordance with what it thinks is a realistic plan for the community itself, considering all of the conditions and circumstances involved, the administrative problems, the personnel problems, and any other relevant and pertinent factors, one of the important ones of which is the efficient and harmonious operation of the school system itself. The Court must not disrupt and destroy the school system. That fact must be kept in mind always.

7. The Supreme Court has recognized the principle that the primary responsibility in assessing and weighing these factors rests with the constituted school board and authorities.

8. The Court does not have any doubt that the School Board has acted in good faith, and has fully carried the burden of proof to show the feasibility of the principal features of the proposed plan.

■■ 9. The plan presented by the defendant County Board of Education should be approved by the Court with the following exceptions and modifications:

a. Instead of the first grade being desegregated, as contemplated by said plan, the Court is of the opinion and holds that the first four grades should be desegregated at one time. This will equalize the plan with the City of Nashville Plan. It is particularly desirable to have the grades of the two systems operating on a parallel basis.

b. In view of the delay which has already occurred in regard to desegregation, the plan should be effective and should be put into operation (that is, the first four grades should be desegregated) at the beginning of the next school semester beginning January 1961, rather than the next school year; and the first five grades will be desegregated beginning September 1961.

c. A specific provision should be included in the decree for the complete elimination of any possible discrimination with respect to the summer classes which are attended by outstanding students. In other words, facilities on a nondiscriminatory, desegregated basis will be provided for students of this type, and provision will be made to notify all teachers in the system, both colored and white, of the availability of these classes, so that there will be no doubt about the colored students having knowledge of the opportunities made available in this respect.

d. Specific notice will be given to all parents of the zone in which their children live. In other words, before the beginning of the school year, the parents of all children will receive specific notice of the zone in which their children fall for the purpose of attending classes in order that there may be removed any possible doubt about some people not having full information.

e. The Court will retain jurisdiction of this case throughout the period of transition.

10. The legal rights of all plaintiffs are recognized and declared but they are enforced in accordance with the provisions of the plan with the above modifications. Said plan is not a denial of the rights of the individual plaintiffs, but is a postponement in enforcement of the rights of some of the plaintiffs in the interest of the school system itself and the efficient, harmonious, and workable transition to a desegregated method of operation.

11. Judgment should again be reserved, for the present, on defendants' motions to strike and to dismiss certain portions of the complaint relating to segregated teacher and personnel assignment, and on the matters raised in the complaint which are involved in said motions, pending submission of further memoranda and argument of counsel.

12. The prayer of the plaintiffs for injunctive relief should be denied, except for the matters as to which judgment is reserved.

## JUDGMENT

It is accordingly ORDERED, ADJUDGED and DECREED as follows:

1. That the plan submitted by the County Board of Education of Davidson County, Tennessee, is approved, except in the following particulars:

a. Compulsory segregation based on race is abolished in Grades One through Four of the Davidson County Schools for the Second Semester of the 1960–61 school year beginning January 1961, and thereafter for one additional grade beginning with each subsequent school year, i. e., for Grade Five in September 1961, Grade Six in September 1962, etc.

b. As respects the summer classes attended by outstanding students, there will be no segregation based on races, and notice of such will be immediately given by the School Board to all teachers in the Davidson County school system, both Negro and white, of the availability of these classes.

c. The Davidson County School Board will, prior to the beginning of the Second Semester of the 1960–1961 school year, and prior to the beginning of each school year thereafter, give specific notice to the parents of all school children of the zone in which their children fall for the purpose of attending classes.

2. The prayer of the plaintiffs for injunctive relief be, and the same is hereby denied, except with regard to those matters as to which judgment is hereinafter reserved.

3. Jurisdiction of this case is retained by the Court throughout the period of transition.

4. Judgment is reserved on the question of the motion to strike and those portions of the motion to dismiss not hereinbefore overruled, and on the matters raised in the complaint which are involved in said motions.

To the foregoing action of the Court in approving the plan submitted by defendants and in denying plaintiffs' prayer for injunctive relief, the plaintiffs except.