Louis E. CARLINER

v.

FAIR LANES, INC., a Maryland corporation, Sidney M. Friedberg, Irving Blum, Archie E. Mackay, Robert G. Merrick, Jr., Sylvia F. Nachlas, Christopher A. Rupp, David P. Gordon, Blum's, Inc., a Maryland corporation, Jerval Enterprises, Inc., a Maryland corporation, Westview Associates, a limited partnership, Joppa Associates, a limited partnership, and Arbutus Associates, a limited partnership.

Civ. No. 15564.

United States District Court
D. Maryland.

Aug. 2, 1965.

Sheldon H. Braiterman, Baltimore, Md., for plaintiff.

John Henry Lewin, Arthur W. Machen, Jr., and Venable, Baetjer & Howard, Baltimore, Md., for remaining defendants.

THOMSEN, Chief Judge.

This case is now before the Court on motions filed by each of the remaining defendants to dismiss the amended complaint for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted.

The original complaint was filed in May 1964 by plaintiff, a stockholder of Fair Lanes, Inc., against that corporation, its seven directors, and eleven other individuals, partnerships and corporations. It contained six counts, some brought derivatively for the benefit of Fair Lanes, some not. Several of the counts contained charges of improper conduct on the part of various defendants which were not supported by the facts alleged. After a hearing on motions to dismiss, plaintiff sought and was granted leave to file an amended complaint, which dropped the claims against six of the original defendants and reduced the number of counts to three. The remaining defendants are Fair Lanes, its seven directors, and two corporations and three limited partnerships, each of which is alleged to be composed of, owned or controlled by some of the directors.

Each count in the amended complaint asserts, on a derivative basis, a separate claim against the directors, and in Counts 2 and 3 against one or more of the other defendants as well.

Jurisdiction with respect to Count 1 is based upon an alleged violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b), and Rule 10b–5, 17 C.F.R. 240.10b–5, promulgated by the Securities and Exchange Commission under the provisions of the Act.[1] Jurisdiction to award the relief sought in Counts 2 and 3 is alleged to be pendent to the jurisdiction over the subject matter of Count 1.

With respect to each count plaintiff alleges that Fair Lanes was incorporated in Maryland in 1948 and sold 120,000 shares of its Class A Common Stock to the public in 1959, pursuant to a registra-

---

1. Section 10(b) of the 1934 Act provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b–5 provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means of instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

tion statement filed with the SEC.[2] Plaintiff owns 505 shares of said stock, which he purchased over the counter from unknown or undisclosed sellers on and after March 15, 1962, at a cost of some $2,626.72, or about $5.20 per share.[3]

Count 1 alleges that on or about October 31, 1962, Fair Lanes entered into an agreement with Sylvia Nachlas, one of the defendant directors, to purchase from her 30,800 shares of Class B Common Stock, being part of a much larger number of shares she had previously agreed to purchase from her brother, Herbert Friedberg, when he retired as an officer of the corporation after a dispute with Mrs. Nachlas and their brother, the defendant Sidney Friedberg, now President and Chairman of the Board of Fair Lanes. Mrs. Nachlas and Sidney Friedberg have at all times owned a majority of the stock in the corporation.

The agreement between the corporation and Mrs. Nachlas provided that the purchase price for the 30,800 shares, payable in ten quarterly instalments, would be $7.65 per share or the market value at each instalment payment date, whichever was lower. The market price was always under $7.65 per share; it averaged $4.79 per share, so only $147,650 was paid for the 30,800 shares as against a possible maximum of $235,620. Mrs. Nachlas had agreed to pay Herbert Friedberg slightly more than $7.65 per share for the large block of shares she purchased from him. The agreement by which the corporation purchased the 30,800 shares from Mrs. Nachlas recited that "Sylvia's obligations to meet the installments to Herbert have become an unduly heavy burden to her, and as a result, she has offered to sell to the Corporation 30,800 shares of her Class B Common Stock upon better terms for the Corporation than if it had purchased such shares directly from Herbert at the time of the termination of his relations with the Company". The agreement further recited that "the Board of Directors of Fair Lanes is of the opinion that the terms of Sylvia's offer are extremely attractive and favorable, and that the acquisition of the shares being offered by her upon such terms would be in the best interest of the Company and the other stockholders of the Company."

Plaintiff alleges that the agreement violated section 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder: in that the purchase itself was fraudulent, and a manipulative and deceptive device prohibited by section 10(b); in that it was in furtherance of a scheme by Sylvia Nachlas, Sidney M. Friedberg and the other defendant directors to divert corporate funds to private purposes; and in that it was part of a general and continued practice of self-dealings and reciprocal and mutual connivance at self-dealings by the defendant officers and directors and a waste of corporate funds, to the damage of the corporation—all as particularized in certain factual allegations, which will be discussed below after a brief consideration of the Statute, the Rule, and the cases construing them.

The Securities Exchange Act of 1934 was framed primarily to provide the SEC with comprehensive regulatory powers. Some sections contain specific provisions for civil liability,[4] but neither section 10 nor the rules promulgated thereunder provide specifically for private rights of action. Nevertheless, the Courts have consistently read section 10(b) and Rule 10b–5 as providing impliedly for private rights of action,[5] usually upon a "tort

---

2. Neither the Class A nor the Class B stock is traded on any exchange. The shares of each class have equal voting rights.

3. At one time plaintiff owned 605 shares, but sold 100 shares at $5.99 per share.

4. E. g., sections 9 and 18, 15 U.S.C.A. §§ 78i and 78r.

5. Fischman v. Raytheon Mfg. Co., 2 Cir., 188 F.2d 783 (1951); Speed v. Transamerica Corp., 3 Cir., 235 F.2d 369 (1956); Errion v. Connell, 9 Cir., 236 F.2d 447 (1956); Hooper v. Mountain States Securities Corp., 5 Cir., 282 F.2d 195 (1960); Estate Counseling Serv. v. Merrill Lynch Pierce Fenner and Smith, Inc., 10 Cir., 303 F.2d 527 (1962); Tex-

theory", based on section 286 of the Restatement, Torts.[6]

Having recognized a private right of action under section 10(b) and Rule 10b–5, the Courts now face the problems created by the broad language used therein. Some plaintiffs have sought to transfer to the federal courts the policing of the entire field of a director's fiduciary duty to the corporation and its stockholders. The courts have found, however, that no such general grant of jurisdiction was intended.

In Birnbaum v. Newport Steel Corp., 2 Cir., 193 F.2d 461, 464, cert. den. 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), the Court said that section 10(b) "was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X–10B–5 extended protection only to the defrauded purchaser or seller."

What facts will and what facts will not support a shareholder's derivative action under Rule 10b–5 are indicated by two recent cases in the Second Circuit. In O'Neill v. Maytag, 2 Cir., 339 F.2d 764 (1964), the Court said, citing Birnbaum as authority:

"Between principal and agent and among corporate officers, directors and shareholders, state law has created duties which exist independently of the sale of stock. While the essence of these duties in some circumstances is honest disclosure, the allegations in the instant case are typical of situations in which deception may be immaterial to a breach of duties imposed under common law principles. The question posed by this case is whether it is sufficient for

an action under Rule 10b–5 to allege a breach of one of these general fiduciary duties where the breach does not involve deception. We think that it is not: At least where the duty allegedly breached is only the general duty existing among corporate officers, directors and shareholders, no cause of action is stated under Rule 10b–5 unless there is an allegation of facts amounting to deception." 339 F.2d at 767–768.

■ Of course, acts of a corporate director or officer may violate both his common law duty and the duty imposed by Rule 10b–5. O'Neill v. Maytag, supra, at 768; New Park Mining Co. v. Cranmer, S.D.N.Y., 225 F.Supp. 261, at 266 (1963). In Ruckle v. Roto American Corp., 2 Cir., 339 F.2d 24 (1964), the plaintiff brought a derivative action alleging that the defendants, who comprised a majority of the board of directors, secured the board's approval of issuance of treasury stock at an arbitrarily low price by withholding the most recent financial statements of the corporation. The Second Circuit sustained the complaint, because there was a clear allegation of deception in connection with the sale of securities, and the fact that the alleged deception occurred within the corporate structure did not by itself avoid liability under Rule 10b–5.

■ In the light of the rules laid down in the cases cited, the question for decision is whether the facts alleged, as distinguished from plaintiff's conclusory allegations, show (1) any device, scheme or artifice to defraud the corporation, or (2) any untrue statement of a material fact or the omission to state a material fact, or (3) any act operating as a fraud or deceit, in connection with the purchase from Mrs. Nachlas. While it is not nec-

as Continental Life Insurance Company v. Dunne, 6 Cir., 307 F.2d 242 (1962); Boone v. Baugh, 8 Cir., 308 F.2d 711 (1962). See also Nash v. J. Arthur Warner & Co., D.Mass., 137 F.Supp. 615 (1955); Beury v. Beury, S.D.W.Va., 127 F.Supp. 786 (1954); and Kohler v. Kohler Co., E.D.Wis., 208 F.Supp. 808 (1962), aff'd 7 Cir., 319 F.2d 634 (1963).

6. For a discussion of this theory see Ruder, Civil Liability Under Rule 10b-5; Judicial Revision of Legislative Intent?, 57 Nw.U.L.Rev. 627 (1963); Joseph, Civil Liability Under Rule 10b-5—A Reply, 59 Nw.U.L.Rev. 171 (1964).

essary to prove common law fraud to make out a private cause of action under the statute and Rule, it is necessary to prove that the plaintiff suffered injury.[7] Since this is a derivative action, the injury must have been to the corporation, not to the plaintiff individually.

Plaintiff does not allege that an unreasonably high price was paid for the 30,800 shares which the corporation purchased from Mrs. Nachlas. The price paid was the prevailing market price at the time of each instalment payment, considerably less than the ceiling price contained in the agreement, considerably less than Mrs. Nachlas was paying her brother, and even less than the average price plaintiff paid on the open market for his shares at about the same time.

■ Plaintiff alleges that "in the formula for adjusting the purchase price, contained in paragraph 6 of said agreement, there inhered opportunity and motivation for the directors and officers of the Corporation either to try to lower the market price of Fair Lanes Stock or to pay more money to Sylvia Nachlas, an invidious alternative from the point of view of the stockholders." It is not alleged that the defendants took advantage of the alleged "opportunity". Assuming that the alleged motivation existed, such motivation without action would not support a finding that the defendants employed a scheme to defraud the corporation; and even if plaintiff had claimed that the defendants in fact lowered the market price of the stock, there could still be no recovery in this derivative action because the corporation would not have been injured. See Hoover v. Allen, S.D.N.Y., 241 F.Supp. 213 (1965).

■ Plaintiff alleges that the acquisition of the 30,800 shares from Mrs. Nachlas was outside the limits of reasonable business judgment, in view of the capital position and needs of the business, as evidenced by the fact that six months later the corporation passed a dividend on its stock and Sidney Friedberg stated in connection therewith that "even

though continued profits are anticipated, it is felt that because of our capital needs for prospective acquisitions and new centers, retained earnings now is to the best long term interest of the stockholder." The passing of the dividend did not hurt the corporation. The question is whether the decision of the directors to buy at the market price a portion of the stock which Mrs. Nachlas was buying from her brother, for the alleged purpose of "bailing her out", rather than to put the money aside for other corporate purposes, was a violation of section 10(b) and Rule 10b–5.

■■ Despite the general principle that Courts will not ordinarily inquire into questions of business judgment by corporate directors, this Court would hold, if the question were before it, that the complaint in this case alleges a sufficient breach of the fiduciary duty owed by the directors of the corporation under State law to require defendants to answer to a complaint based upon State law. But no jurisdiction based upon diversity of citizenship is claimed or exists in the instant case. To sustain jurisdiction under section 10(b) of the Securities Exchange Act of 1934 plaintiff must allege facts amounting to deception, O'Neill v. Maytag, supra, which the allegations under consideration do not show.

Plaintiff does not allege that the matter was not fully explained to the entire Board of Directors of Fair Lanes. Cf. Ruckle v. Roto American Corp., supra. He impliedly alleges that it was, and admits the fact in his brief. He does claim, however, that certain improper purposes motivated the defendants to enter into the Nachlas transaction and then he alleges that the directors did not report these purposes to the shareholders. Plaintiff claims that "a primary purpose of the agreement was to relieve the Defendant, Sylvia Nachlas, a director of the corporation, from her burdensome installment obligations, arising from an earlier private transaction in the stock of the Corporation"; that the agreement

---

7. See 74 Yale L.J. 658, 661 (1965).

of the corporation to purchase her stock constituted a "bailout" of Mrs. Nachlas at the corporation's expense; and that the "agreement involved the use of corporate funds for the purpose of preserving and strengthening control of the Corporation by the Friedberg family, measured by percentage of voting stock ownership".

In O'Neill v. Maytag, supra, the Court stated that in denying plaintiff relief it reached its conclusions "despite the contrary position taken by the Securities and Exchange Commission * * * that a claim under Rule 10b–5 is stated by allegations that a corporation's 'controlling directors caused it to acquire a large block of its own stock at an excessive price for the purpose of removing the threat to the directors' control represented by the stock.'" 339 F.2d at 768. The brief filed by the SEC in O'Neill supplemented that argument with the point that the plaintiff therein was claiming, albeit implicitly, that the defendants had not fully disclosed the conflicting interest which motivated the securities transaction to the stockholders, or to others entitled to such disclosure. The Second Circuit rejected the broad position of the SEC, as stated in the Court's opinion. Whether or not the SEC intended its argument to be qualified by the additional point of non-disclosure, the argument of the SEC in that case does not apply here, because there is no allegation that Fair Lanes acquired the 30,800 shares from Mrs. Nachlas at an excessive price. The facts alleged and the exhibits show the contrary. Nor did the 30,800 shares of stock represent any threat to the control of Fair Lanes by Mrs. Nachlas and her brother Sidney Friedberg. The undisputed facts show that even if Mrs. Nachlas had sold the 30,800 shares to outsiders, she and her brother Sidney would still have owned more than half of the stock of the corporation.

Nevertheless, plaintiff would have this Court hold defendants bound under Rule 10b–5 to disclose to the shareholders the alleged purpose of "bailing out" Mrs. Nachlas. Although no notice to the stockholders of Fair Lanes was given before the agreement to purchase the 30,800 shares was entered into, the complaint itself shows that the transaction was fairly reported to the stockholders in the next annual report and in sufficient detail to alert plaintiff to whatever rights he may have.

Moreover, as was pointed out by a former Executive Assistant to the Chairman of the SEC, the federal courts should not be involved "in working out federal rules to govern every aspect of corporate behavior that involves securities. * * * It is clear that federal law should not cover every breach of duty associated with a securities transaction. Thus, a repurchase by a company of its own stock at fair market value, but for an improper purpose, should be excluded".[8] This Court agrees. Such claims of nondisclosure as plaintiff makes here do not support an action under Rule 10b–5.

Plaintiff makes a number of other charges with respect to the Nachlas transaction, but they are either matters that may have affected individual stockholders but could not have damaged the corporation, or are not supported by the facts alleged and the agreements attached as exhibits.

For the reasons stated herein, Count 1 of the complaint must be dismissed for failure to state a claim upon which relief can be granted under Rule 10b–5. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); O'Neill v. Maytag, supra, 339 F.2d at 766.

■ Counts 2 and 3, the pendent State law claims, should also be dismissed without prejudice. Assuming that this Court has discretion to retain these two Counts, they involve ordinary principles of Maryland law, which should be decided by the State Courts. See Massachusetts Universalist Convention v. Hildreth & Rogers Co., 1 Cir., 183 F.2d 497, 501 (1950); Wham-O-Mfg. Co. v. Paradise Mfg. Co., 9 Cir., 327 F.2d 748, 752–754 (1964);

8. Fleischer, "Federal Corporation Law:" An assessment, 78 Harv.L.Rev. 1146, 1166.

T. B. Harms Co. v. Eliscu, 2 Cir., 339 F.2d 823, 828–829 (1964); Hart & Wechsler, The Federal Courts and the Federal System, 808 (1953); ALI Study of the Division of Jurisdiction Between State and Federal Courts, Commentary, pp. 59–60 (Tentative Draft No. 3, 1965).

Counsel will prepare an appropriate order.