Harold POLAKOFF and Paul Leahy, Plaintiffs,

v.

The DELAWARE STEEPLECHASE AND RACE ASSOCIATION, now or formerly a Delaware corporation, et al., Defendants.

Civ. A. No. 3011.

United States District Court
D. Delaware.

May 2, 1966.

Cohen, Morris and Rosenthal, Wilmington, Del., for plaintiffs; Irving Morris, J. A. Rosenthal, Wilmington, Del., of counsel.

Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for all defendants except Harry W. Lunger; James M. Tunnell, Jr., Richard L. Sutton, William S. Megonigal, Jr., Wilmington, Del., of counsel.

Prickett & Prickett, Wilmington, Del., for defendant Harry W. Lunger; Richard I. G. Jones, Wilmington, Del., of counsel.

BARTELS, District Judge.*

Plaintiffs Polakoff and Leahy, former stockholders of The Delaware Steeplechase and Race Association (Steeplechase), bring this action pursuant to Rule 23(a), Fed.Rules Civ.Proc., 28 U.S. C.A., against Steeplechase, Delaware Racing Association (Racing), and the directors of both Steeplechase and Racing, alleging a violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b) [1], and Rule 10b–5 of the Securities and Exchange Commission promulgated thereunder, 17 CFR § 240.-10b–5 [2]. According to their allegations, they bring the action "individually and as representatives of all other stockholders similarly situated" of Steeplechase, asserting that they were induced to sell their shares of stock in Steeplechase at a price grossly below their true value as a result of a false and misleading appraisal which the plaintiffs claim was issued by the defendants and that this fraud facilitated a merger between Steeplechase and Racing which was consequently illegal. Jurisdiction is founded on Section 27 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78aa.

The complaint sets forth two causes of action, seeking both equitable relief and damages, one a representative action in Count I for harm done to the stockholders, and the other a derivative action in Count II for harm done to Steeplechase. The complaint alleges that the "rights sought to be enforced are joint or common entitling the plaintiffs, as members of the class, to enforce them, and several and there are common questions of law and fact affecting the several rights and the relief hereinafter alleged to be sought is common to the class." The factual allegations may be summarized as follows:

Sometime in 1961, the directors of Steeplechase (the duPont group) "conceived a plan to secure complete control over the assets of Steeplechase and the

---

* Sitting by designation from the Eastern District of New York.

1. Section 78j provides in part that "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
\* \* \* \* \* \* \* \*
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

2. Rule 10b–5, 17 CFR § 240.10b–5 provides that "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security."

operation of the racetrack and to terminate any and all ownership in Steeplechase stock at a price far below the value of the outstanding Steeplechase stock and the assets underlying the stock." Pursuant to this plan, the defendant William duPont, Jr., on April 26, 1962 wrote to Steeplechase stockholders inviting them either to donate their shares to Delaware Park Inc. (a non-profit charitable Delaware corporation which had been formed by the duPont group in January, 1961), or to sell them to him at $1530 a share (the current fair market value as fixed for the duPont group by Standard Research Consultants, Inc.) and he in turn would donate the shares to Delaware Park. Relying on the letter of April 26, 1962 and the appraisal therein contained, the plaintiff Polakoff sold his share to William duPont, Jr. for $1530 on May 24, 1962.

Subsequently, on or about August 2, 1962, the duPont group formed Racing with the intent of having it replace Delaware Park as the recipient of the stock of Steeplechase and eventually replace Steeplechase through merger of the assets of Steeplechase. This plan came to fruition on July 31, 1963 when Racing, having acquired more than 90% of the common stock of Steeplechase, merged Steeplechase into it pursuant to 8 Del. Code § 253. The remaining stockholders of Steeplechase received notice of the merger on August 7, 1963 and were given the option of either turning in their stock for $1530 per share or exercising their statutory right to a court directed appraisal. Relying on duPont's letter of April 26, 1962 and Racing's notice of August 7, 1963, the plaintiff Leahy on March 13, 1964 took the former course and accepted $1530 per share for his stock.

Both plaintiffs claim that the defendants acted fraudulently by not disclosing the plans for a merger and that duPont's offer to purchase the Steeplechase shares was a "contrivance and a deceptive device" inasmuch as it failed to disclose the plans of the duPont group to acquire 90% of the Steeplechase stock. They further allege that William duPont's April 26, 1962 letter and the August 7, 1963 notice of merger failed to disclose information "which a stockholder would need to exercise intelligently a judgment as to whether or not to sell his shares" including the fact that Standard Research Consultants, Inc., the firm responsible for the $1530 figure, "was not experienced in appraising * * * race tracks"; that the $1530 figure used in both of these documents was false and misleading within the meaning of Rule 10b–5 in that it failed to disclose the true liquidation value of the racing plant and equipment and the land owned by Steeplechase, and that a proper valuation of these assets would demonstrate that "the liquidation value of the Steeplechase assets would make each share of Steeplechase worth approximately $9,000 a share rather than the $1530 offered per share".[3]

Defendants, among other things, move to dismiss Count I of the complaint insofar as it purports to state a claim on behalf of any class other than one which might be defined in Rule 23(a) (3), Fed. Rules Civ.Proc., 28 U.S.C.A., and that the words "joint or common entitling the plaintiffs, as members of the class, to enforce them" should be stricken from the complaint. Further, defendants claim that it is obvious from the factual allegations of the complaint that the present action is clearly not a true class action but instead, what is commonly referred to as a "spurious" class suit and that a decision to this effect would clarify the position of the parties. They add that since it is undisputed that Polakoff sold his shares prior to the merger, it is impossible for him to represent individuals "who were

---

3. See, Application of Delaware Racing Association, S.C.Del.1965, 213 A.2d 203, where the Court in an appraisal proceeding fixed the value of each share of stock at $2,321.30 and stated that "these stockholders are entitled to be paid the intrinsic value of their shares determined on a going concern basis, which excludes a valuation based solely upon the liquidating value, or an aliquot share in the value of the assets of the merged corporation." (213 A.2d p. 209)

stockholders of Steeplechase prior to the merger \* \* \* and who continued as Steeplechase stockholders until they received the purported liquidation value of their Steeplechase shares after the merger". In other words, defendants claim that the plaintiffs having sold at different times, are either in two different classes or in two different subdivisions of the same class.

As to Count II, the defendants assert that the complaint should be dismissed because, among other reasons, (i) no injury has been inflicted upon Steeplechase, and (ii) the plaintiffs cannot sue derivatively on behalf of Steeplechase since Steeplechase ceased to exist by merger.

### Count I of the Complaint

■ Obviously, the plaintiffs would prefer to cast their suit in the form of a true class action because such a classification would afford them an opportunity to represent a number of absent stockholders whom they might not otherwise represent. Such representation in turn might provide a greater possibility of a rescission if such remedy was feasible and sought by the entire class. In addition, by reason of the res judicata effect of the judgment in a true class action, the plaintiffs would be able to apportion the fees and expenses of the action among all members of the class. Unless, however, the action is predicated upon rights which are joint or common rather than upon rights which are only several with common questions of law or fact, the suit can-

not be classified as a true class action and must fall within the category of that "legal curiosity" [4] known as a spurious class action.

■ As stated by Professor Loss, "the true class action is of no significance here" since "class actions under the securities statutes must qualify, if at all, as the spurious variety".[5] Despite the conclusory allegations of the complaint, the present suit does not assert rights which are "joint or common" and is not a true class action under Rule 23, Fed.Rules Civ. Proc., 28 U.S.C.A. Accordingly, it would be misleading for the Court to allow the complaint to remain in its present form without amendment. It will therefore be dismissed for the purpose of permitting the plaintiffs to file an amended complaint setting forth their claims in their true legal light and if they deem it advisable, claims on behalf of others similarly situated which will be treated as falling within that class commonly referred to as a spurious class.[6]

■■ Labelling this type of suit as a class action is to a great extent a misnomer because of the lack of res judicata effect of the judgment in the action on absent members of the class.[7] Therefore it is often referred to as simply a joinder device and an invitation to intervene.[8] It does, however, have some advantages even in a Securities Exchange Act[9] case such as this, which may make it a useful device for the plaintiffs. For example, it may have a greater stare decisis effect

---

4. Escott v. Barchris Construction Corporation, 2 Cir. 1965, 340 F.2d 731, 736 (concurring opinion of Judge Friendly), cert. denied, sub. nom., Drexel & Co. v. Hall, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63.

5. 3 Loss, Securities Regulation (Second Edition 1961) p. 1820.

6. Cf., Nagler v. Admiral Corporation, 2 Cir. 1957, 248 F.2d 319.

7. See, e. g., Fox v. Glickman Corporation, 2 Cir. 1965, 355 F.2d 161.

8. See, e. g., California Apparel Creators v. Wieder, 2 Cir. 1947, 162 F.2d 893, 174 A.L.R. 481, cert. denied, 332 U.S. 816, 68

S.Ct. 156, 92 L.Ed. 393; Mutation Mink Breeders Association v. Lou Nierenberg Corp., S.D.N.Y.1959, 23 F.R.D. 155; and the discussion in 3 Moore's Federal Practice (Second Edition 1964) ¶ 23.10.

9. In a non-Securities Exchange Act case where diversity of citizenship is required, the spurious class action may enable other persons similarly situated to intervene without regard to jurisdictional limitations applicable to original parties. According to Professor Moore, this is "the raison d'etre of the spurious class suit". 3 Moore's Federal Practice (Second Edition 1964) ¶ 23.10 [1] p. 3444.

than an individual action [10] and it has been held to toll the statute of limitations for those members of the class who seek to intervene at a later date.[11] But even in a spurious class action, the plaintiffs must allege and prove some of the prerequisites necessary for maintenance of a true class action. Thus some courts have dismissed spurious class actions when adequacy of representation was not established.[12] Again, common relief must be sought in a spurious action [13] and the plaintiffs must "still show that they represent stockholders other than just themselves".[14] These requirements have not as yet been satisfied in this case and if they are not satisfied during the course of the trial after the filing of the amended complaint, the action may fail even as a spurious class suit.[15] This legal fog which envelops the so-called spurious class action [16] under the old rule has led to the adoption of a new Rule 23 (effective July 1, 1966) which is designed to free class actions from some of the old court-engrafted restrictions.[17] At the present time, the new rule is inapplicable to this proceeding and whether it ever becomes applicable depends upon the circumstances of this case as they are developed in the future.

■ Inasmuch as the complaint must be amended to eliminate the characterization of the plaintiffs' rights as "joint or common entitling the plaintiffs, as members of the class, to enforce them", the Court believes that in the interest of clarity, the plaintiffs should at the same time separate the group of stockholders represented by Polakoff from the group of stockholders represented by Leahy.[18] One category consists of

10. As stated in All American Airways, Inc. v. Elderd, 2 Cir. 1954, 209 F.2d 247, 248, the spurious class action "stands as * * * an admonition to the court to proceed with proper circumspection in creating a precedent which may actually affect nonparties, even if not legally *res judicata* as to them."

11. Escott v. Barchris Construction Corporation, supra.

12. Pennsylvania Company for Insurances on Lives and Granting Annuities v. Deckert, 3 Cir. 1941, 123 F.2d 979; Associated Orchestra Leaders v. Philadelphia Musical Society, E.D.Pa.1962, 203 F.Supp. 775; Carroll v. Associated Musicians of Greater New York, S.D.N.Y.1962, 206 F.Supp. 462, aff'd, 2 Cir. 1963, 316 F.2d 574; Zachman v. Erwin, S.D.Tex.1959, 186 F. Supp. 681; Rio Haven, Inc. v. National Screen Service Corporation, E.D.Pa.1951, 11 F.R.D. 509; see also, Oppenheimer v. F. J. Young and Co., 2 Cir. 1944, 144 F.2d 387; cf., Mills v. Sarjem Corporation, D.C.N.J.1955, 133 F.Supp. 753; Rosen v. Bergman, S.D.N.Y., 40 F.R.D. 19, March 21, 1966, CCH Federal Securities Law Reporter (Current) ¶ 91,-659.

13. As stated in 2 Barron & Holtzoff Federal Practice and Procedure § 562.3, p. 283, "the accepted interpretation is that 'common relief' in Rule 23(a) (3) covers cases where the same type of relief, such as damages or an injunction, is being sought for or against all members of the class, as distinguished from cases where an injunction is being sought with regard to some members of the class and damages as to others."

14. Knapp v. Bankers Securities Corporation, E.D.Pa.1956, 19 F.R.D. 515, 516.

15. Cf., Harris v. Palm Springs Alpine Estates, 9 Cir. 1964, 329 F.2d 909.

16. See, e. g., the discussions in Dickinson v. Burnham, 2 Cir. 1952, 197 F.2d 973, 979, cert. denied, 344 U.S. 875, 73 S.Ct. 169, 97 L.Ed. 678; Union Carbide and Carbon Corporation v. Nisley, 10 Cir. 1961, 300 F.2d 561, 587–590, pet. cert. dism. 1963, 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46; Note, Federal Class Actions: A Suggested Revision of Rule 23, 46 Col. L.Rev. 818 (1946); Developments in the Law-Multiparty Litigation in the Federal Courts, 71 Harv.L.Rev. 874, 934–941 (1958).

17. See the new rule together with the Advisory Committee's Note as published in 39 F.R.D. 95. As to the *power* of the courts under the old rule, see Cherner v. Transitron Electronic Corporation, D.C. Mass.1962, 201 F.Supp. 934; 3 Moore's Federal Practice (Second Edition—1965 Supplement) ¶ 23.01 [6] p. 219; cf., Hansberry v. Lee, 1940, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22; Cherner v. Transitron Electronic Corporation, D.C. Mass.1963, 221 F.Supp. 48, 53.

18. Cf., D & A Motors v. General Motors Corporation, S.D.N.Y.1956, 19 F.R.D.

stockholders who sold before the notice of merger and the other category consists of stockholders who sold after the notice of merger, and each may require separate and different treatment at the trial. It is true that the rights of the members of the class need not be identical in order to qualify them as such members,[19] and this Court is not suggesting that the rights of these two groups do not present common questions of law and fact or that the members thereof are not in the same class.[20] However, a clear delineation of the two groups represented by the plaintiffs would be of substantial assistance in the trial of the issues involved and accordingly plaintiffs should avail themselves of this opportunity to set forth such a definition in the amended complaint. This may be done in two separate paragraphs to replace the indiscriminate lumping together of the two groups appearing in Count I, paragraph 2 of the present complaint, or in such other manner as the plaintiffs may deem advisable.

### Count II of the Complaint

There is no doubt that a derivative action may be brought for violation of Rule 10b–5[21]; however, this rule does not dispense with the prime prerequisite for such a suit, i. e., injury to the corporation.[22] If the damage sustained by reason of the alleged fraud was inflicted upon the stockholders and not upon the corporation, then, of course, no derivative suit will lie either under the Securities Exchange Act or at common law. In this case Steeplechase has not

been harmed because there is nothing inherent in the purchase of shares of stock from other stockholders by a director-stockholder which inflicts injury upon the corporation. No stock was purchased by Steeplechase and, consequently, its property and assets were in no way affected by the purchases and sales of the stock. If a wrong has been committed here, it has been perpetrated upon the individual selling stockholders and not upon the corporate entity.[23]

While this conclusion necessitates the dismissal of Count II now, this may not be the end of the story. Developments at the trial might reveal facts which would justify the Court in permitting the plaintiffs to subsequently amend the complaint to allege a derivative cause of action. Such a situation might arise if (i) the holders of 10% or more of the stock of Steeplechase intervened and established that their stock was acquired by fraudulent representations in violation of Rule 10b–5 and thereupon demanded rescission, and (ii) the Court decided that such rescission was an appropriate remedy. Under such circumstances, Racing would be in a position where it never legally held the 90% of the Steeplechase stock necessary to effectuate a short form merger under 8 Del. Code § 253. In that event the defrauded stockholders might have a derivative cause of action for expenses paid by Steeplechase in effectuating and in unravelling the abortive merger.[24] While such a cause of ac-

365, 366 ("a clear definition of the class is essential"); see also, Hathaway Motors Inc. v. General Motors Corp., D.C. Conn.1955, 19 F.R.D. 359, 360.

19. 3 Moore's Federal Practice (Second Edition 1964) ¶ 23.10 [5], p. 3454.

20. Compare, Speed v. Transamerica Corp., D.Del.1945, 5 F.R.D. 56.

21. Ruckle v. Roto American Corporation, 2 Cir. 1964, 339 F.2d 24; Slavin v. Germantown Fire Insurance Co., 3 Cir. 1949, 174 F.2d 799; Fischman v. Raytheon Mfg. Co., 2 Cir. 1951, 188 F.2d 783; cf., J. I. Case Co. v. Borak, 1964, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423.

22. See, e. g., Ruckle v. Roto American Corporation, supra; Slavin v. Germantown Fire Insurance Co., supra; Simon v. New Haven Board & Carton Co., D.C.Conn. 1966, 250 F.Supp. 297; Hoover v. Allen, S.D.N.Y.1965, 241 F.Supp. 213; Carliner v. Fair Lanes Inc., D.C.Md.1965, 244 F. Supp. 25; Kremer v. Selheimer, E.D.Pa. 1963, 215 F.Supp. 549.

23. Hoover v. Allen, supra.

24. Cf., Treves v. Servel Inc., S.D.N.Y.1965, 244 F.Supp. 773; see also, Section 29(b) of the Securities Exchange Act, 15 U.S. C.A. § 78cc(b).

tion is speculative and contingent,[25] its possibility in this connection cannot be completely ignored. At present, however, no such facts have been alleged.

The above conclusions make it unnecessary to discuss defendants' other contention that the disappearance of Steeplechase by merger likewise renders such a derivative suit against Steeplechase impossible.[26]

Service of the amended complaint shall be made upon the defendants within ten (10) days after the entry of an order in accordance with the foregoing.

---

25. In a Rule 10b–5 case the plaintiff can undo the bargain only "when events since the transaction have not made rescission impossible". 3 Loss, Securities Regulation (Second Edition 1961) p. 1793. See also, May v. Midwest Refining Co., 1 Cir. 1941, 121 F.2d 431, cert. denied, 314 U.S. 668, 62 S.Ct. 129, 86 L.Ed. 534.

26. Compare, Braasch v. Goldschmidt, Del. Ch.1964, 199 A.2d 760 with Voege v. American Sumatra Tobacco Corp., D.Del. 1965, 241 F.Supp. 369.